336 So.2d 732 (1976)
Roger L. IVORY
v.
STATE of Mississippi.
No. 49204.
Supreme Court of Mississippi.
August 24, 1976.
Joe M. Buchanan, Indianola, for appellant.
A.F. Summer, Atty. Gen. by Pete J. Cajoleas, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and BROOM, JJ.
ROBERTSON, Justice:
The grand jury at the October, 1975, term of Circuit Court of Sunflower County, returned a joint indictment against Roger Lee Ivory, Walter Lee Buckner and Edward Burrage, for the burglary of a cafe known as the Quick-Chick on June 10, 1975.
Ivory was arraigned on October 14, 1975, and, through his court-appointed attorney, pleaded "Not Guilty". Buckner waived arraignment. Burrage has never been apprehended.
The court order of October 14, 1975, provided:
"IT IS FURTHER ORDERED, any motions for severance and the like be filed within a reasonable time from and after this date."
On October 27, 1975, the day before the case was set for trial, Ivory filed a motion for severance which recited:
"[A]nd in support thereof would show that statements were made by one or *733 more of the Co-Defendants which would be damaging to the other Co-Defendants."
Ivory's motion for severance was heard on October 28, 1975, and was overruled. Immediately thereafter the case was tried. Ivory was found guilty and Buckner not guilty. Ivory was sentenced to six years in the penitentiary. He appeals his conviction and sentence.
The chief prosecution witness was Arthur Powell, a 15-year-old youth. Powell testified that he and Buckner were lookouts and Burrage and Ivory entered the Quick-Chick through a side door. When they returned, Burrage gave Powell some nickels; Ivory had some cigarettes and change in his pockets.
Ivory took the stand in his own defense, and testified that he and Buckner were going to Ivory's house to play cards when they came upon Burrage and Powell, who were arguing. Ivory heard Burrage threaten to kill Powell because Powell "would tell it". Burrage told Buckner and Ivory to be lookouts while he and Powell broke into the Quick-Chick. When Burrage and Powell returned, Burrage gave Powell something and Ivory ran home. Ivory testified that he wasn't given anything and was a lookout only because he was afraid of Burrage.
Buckner, co-defendant, was placed on the stand by his attorney. His testimony was substantially the same as Ivory's. In answer to questions asked by Ivory's counsel, Buckner testified that Ivory had no part in the burglary, that he and Ivory stood on the corner and fifteen or twenty minutes later when he (Buckner) saw Burrage and Powell running "Both of us ran".
On cross-examination by the county attorney after Buckner insisted that he and Ivory had nothing to do with the burglary, that they merely stood on the corner, the prosecution questioned Buckner about a statement written by Buckner and given to Deputy Sheriff Hayes on June 10, 1975. Buckner admitted that he was advised of his rights and that the statement was voluntarily made.
The statement was received as an exhibit without objection, but when Buckner was asked to read it to the jury, Ivory's counsel objected and a hearing was held in the court's chambers. Ivory's counsel made this objection:
"Comes now the defendant, Roger Lee Ivory, by and through his attorney of record and objects to the statement allegedly written and signed by Walter Lee Buckner on June 10, 1975, and would show in support thereof, that at the time of the arraignment on or about October 14, 1975, Roger Lee Ivory, by and through his attorney reserved the right to request a severance in this cause; and a later date made a motion for a severance which was denied by this Court and the law is clear that one co-defendant confession cannot be used against another co-defendant unless all references to the co-defendant is stricken from the statement thereof."
The court, in overruling the objection, said:
"During the presentation of this evidence, the State made no attempt whatsoever to introduce this statement and if this statement had implicated your defendant, and if they had attempted to do that, certainly, this Court would not have allowed them to do it. We are in a position now where the defendant takes the stand and makes statements and the State is now attempting to impeach him. This is something in my opinion that is entirely different by showing prior inconsistent statements. This is entirely different in my opinion from the State attempting to introduce one confession of one defendant implicating another. They are attempting to impeach him now by showing prior inconsistent statements. Which differs from the testimony he has given from the witness stand. I am going to overrule that Motion."
The statement read:
"Monday night about ten o'clock me and Edward D, Roger Lee Ivory and Powell was walking down by the Quick Chick *734 and Edward D. stopped. Edward D. said that he was going to kill Powell. I told him that he did not have to do it. I wanted to stop him from shooting him. Edward D. and Roger Ivory went to the place. He told us if he heard anything about it, he was going to kill  I don't know anything about no money or anything  Know that they entered the place Monday night. Edward D. and Roger Ivory entered the Quick Chick Monday night through the side door."
Ivory's first assignment of error is that the court erred in denying him a severance.
Mississippi Code Annotated section 99-15-47 (1972) provides:
"Any of several persons jointly indicted for a felony may be tried separately on making application therefor before the order for a special venire in capital cases and before arraignment in other cases." (Emphasis added).
Ivory admittedly did not apply for a severance before arraignment on October 14, 1975. However, the order of the court entered on October 14, 1975, provided that "any motions for severance and the like be filed within a reasonable time from and after this date."
In Bolin v. State, 209 Miss. 866, 48 So.2d 581 (1950), this Court said:
"Appellants also say that the trial court erred in denying their motion for a severance. Mississippi Code of 1942, Section 2514, grants a right to severance if the application for it is made before arraignment in felony cases, except capital cases. Here the record clearly shows that the application for severance was made after the arraignment, and under those circumstances the granting of a severance is discretionary with the trial court. Malone v. State, 1900, 77 Miss. 812, 26 So. 968; Lifer v. State, 1940, 189 Miss. 754, 199 So. 107." 209 Miss. at 873, 48 So.2d at 583.

See also, Dueitt v. State, 225 Miss. 254, 83 So.2d 91 (1955).
In the case at bar, it was within the court's sound discretion whether a motion for severance should be granted and we cannot say that the court abused its discretion in overruling the motion for severance filed on October 27, 1975 (13 days after arraignment and 1 day before the case was set for trial).
Ivory contends in his second assignment of error that he was entitled to have all references to him stricken from the statement of Buckner.
In Blade et al. v. State, 240 Miss. 183, 126 So.2d 278 (1961), this Court considered a somewhat similar situation. Blade and two co-defendants were jointly tried and convicted of the crime of rape. With reference to the admission into evidence of a prior inconsistent statement of Blade which implicated a co-defendant, this Court said:
"This evidence was clearly in rebuttal as to a previous contradictory statement made by the appellant Blade. Forman v. State, 220 Miss. 276, 70 So.2d 848. Of course, this evidence was admissible as to the appellant Blade and was not to be considered against the other two appellants, and an instruction could have been obtained to this effect. Dueitt v. State, 225 Miss. 254, 83 So.2d 91. The trial court could not give this instruction unless it was requested. Gangloff v. State, 232 Miss. 395, 99 So.2d 461." 240 Miss. at 187-88, 126 So.2d at 280. (Emphasis added).
The record does not reflect that Ivory's counsel requested such an instruction. The trial court cannot be put in error for failing to give an instruction unless requested in writing to do so. Newell v. State, 308 So.2d 71, 78 (Miss. 1975). Furthermore, Ivory's attorney was given an opportunity to examine co-defendant Buckner concerning this statement but refused to do so.
The statement of Buckner was not introduced until he took the stand in his own defense after the prosecution had rested, and made statements under oath at variance with his prior written statement.
In Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), the confession *735 of a co-defendant, implicating the defendant, was introduced into evidence in the prosecution's case in chief, with a Delli Paoli instruction by the trial judge. The co-defendant took the stand in his own defense and denied the confession. Defendant's counsel did not cross-examine the co-defendant. After discussing Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), extensively, the Court stated:
"We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth amendments." 402 U.S. at 629-30, 91 S.Ct. at 1727, 29 L.Ed.2d at 228.

See also, Cain et al. v. State, 253 Miss. 368, 175 So.2d 638 (1965).
Under the peculiar circumstances of this case, we think that it was proper to allow the prosecution to introduce into evidence Buckner's prior inconsistent statement to impeach his testimony.
We have carefully considered the third assignment of error and find it to be without merit.
The judgment is affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.