478 So.2d 1017 (1985)
John L. HARPER
v.
STATE of Mississippi.
No. 55672.
Supreme Court of Mississippi.
October 16, 1985.
*1018 P. Zeb Jones, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
This appeal presents important questions respecting the nature and extent of the trial judge's responsibility with regard to instructing juries in the law in criminal cases. We answer these questions by declaring that, where under the evidence a party is entitled to have the jury instructed regarding a particular issue and where that party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new, corrected instruction. Where the trial judge fails in this duty and where the proffered instruction relates to a central issue in the case which is not covered by any other instruction given to the jury, we will reverse.
All of this arises in the context of a burglary prosecution in Hinds County Circuit Court wherein the accused emboldened by intoxication came right through a plate glass window on the front of the victim's occupied dwelling. The accused's breaking and entering were far more picturesque and dramatic than in the normal mundane burglary case, and the evidence was legally adequate to establish such. Because, however, under the evidence the accused was entitled to have the jury consider whether he was guilty only of the lesser included offense of trespassing and because en route to refusing him that right the trial judge fell short of performance of his duty as described above, we reverse and remand for a new trial.

II.
This case has its genesis in an unhappy domestic situation. John L. Harper, Defendant below and Appellant here, and his wife, Cathy, were divorced on October 10, 1981. Custody of their young daughter, Candice, was given to Harper's ex-wife. On November 5, 1982, Harper's ex-wife married a man named Jeff Foster. Harper was upset by this but became particularly agitated when his ex-wife told him that she and her new husband were thinking of moving to Texas and taking the little girl with them.
On the night of November 11, 1982, Harper got drunk and at around 2:30 a.m. drove out to the home of his ex-wife and her new husband. Harper kicked on the door and woke everyone up and demanded that he be allowed to see his daughter before they moved to Texas. Not surprisingly, Harper was refused entrance. He was told he could exercise visitation on the weekends as prescribed by the divorce decree. Harper left, got in his vehicle and drove off, and the Fosters started back to their bedroom. Before getting there, they heard a crash in the living room area. Still highly intoxicated, Harper had returned, kicked out a four foot by eight foot picture window and burst through into the living room. Foster testified that Harper said he (Harper) was going to kill him (Foster). In any event, harsh words were exchanged as *1019 Harper, unarmed, came down the hall, at which point Foster fired two shots hitting Harper in the stomach and shoulder. According to Foster, Harper kept saying he was going to fight him (Foster). Foster was able to hold Harper on the floor, the police were called and Harper was taken into custody.
The evidence regarding the events of the night of November 11, 1982, was the subject of some dispute at trial. Harper consistently denied any intent to harm anyone or commit any crime once inside the Foster home. He repeatedly said that his only purpose in going into the home was to see his child before she was taken to Texas. He insisted that Foster had provoked the physical altercation by drawing and firing a firearm.
For his efforts of the evening, Harper was indicted by the Grand Jury of the First Judicial District of Hinds County, Mississippi, for burglary of an inhabited dwelling. Miss. Code Ann. § 97-17-21 (1972). Necessarily  and this is important to one of the issues to be discussed below  Harper was charged with unlawfully breaking and entering the Foster home "with intent to commit some crime therein". At trial the State sought to prove that Harper broke and entered with intent to commit an assault upon Jeff Foster, his ex-wife's new husband. In due course Harper was found guilty of burglary of an inhabited dwelling and on January 24, 1984, sentenced to ten years imprisonment, five years of which were suspended. Harper now appeals his conviction and sentence.

III.
Harper first assigns as error the trial judge's refusal to grant his motion for judgment of acquittal notwithstanding the verdict. That motion, of course, functionally operated as a renewal of Harper's request for a peremptory instruction made at the conclusion of all of the evidence and after both sides had rested. The legal basis of the motion was Harper's suggestion that the evidence was insufficient as a matter of law to establish an essential element of the offense, to-wit: That when he literally broke and entered the Foster home he did so with intent to commit some crime therein. Harper says that he only wanted to see his daughter before his ex-wife took her to Texas.
Harper's state of intoxication on the occasion in question, indisputably extensive, does not operate to negative criminal intent in cases such as this. Cummings v. State, 465 So.2d 993, 995-96 (Miss. 1985); McDaniel v. State, 356 So.2d 1151, 1161 (Miss. 1978). Harper does not seriously argue to the contrary.
The fatal flaw in Harper's assignment is that it ignores firmly established and lawfully imposed limitations upon our scope of review of jury verdicts in criminal cases. Where a defendant in a criminal prosecution has requested a peremptory instruction in a criminal case or after conviction renewed that request via a motion for judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. Williams v. State, 463 So.2d 1064, 1067 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the verdict must be accepted as true. Warn v. State, 349 So.2d 1055, 1056 (Miss. 1977); Spikes v. State, 302 So.2d 250, 251 (Miss. 1974); Cochran v. State, 278 So.2d 451, 453 (Miss. 1973). The State must be given the benefit of all favorable inferences that may reasonably be drawn from the credible evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or j.n.o.v. is required. Williams v. State, 463 So.2d at 1067. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden *1020 of proof standard, fair-minded men in the exercise of impartial judgment might reach different conclusions  the request or motion should be denied and the jury's verdict allowed to stand. Williams v. State, 463 So.2d at 1068; May v. State, 460 So.2d at 781.
The core of Harper's point here is his contention that the State's proof fails on one of the essential elements of the crime of burglary, i.e., a previously formed intent to commit some crime within the dwelling after entry. No other part of the State's factual scenario of what Harper did at the Foster home on the night in question is seriously contested. More to the point, no other element of the offense charged is said to have been proved so inadequately that Harper of right was entitled to the granting of his request for a peremptory instruction or his motion for j.n.o.v.
Viewing the evidence in accordance with the standards outlined above, we have the testimony of Jeff Foster that immediately upon entry Harper expressed an intent to kill him. Moreover, the circumstances suggest that Harper, drunk though he was, had become enraged by Foster's refusal to allow him admittance and had returned to the house and burst through the window with intent to do Foster harm. Reasonable jurors could believe from this and other evidence in the record that Harper formed the intent to assault Foster before he (Harper) broke into the house. Without further ado, we hold that the evidence was sufficient so that, with respect to the "intent to commit some crime therein" issue, Harper's request for a peremptory instruction and his subsequent motion for judgment of acquittal notwithstanding the verdict were correctly denied.

IV.

A.
Harper next assigns as error the trial judge's refusal to submit to the jury the question of whether he may have been guilty of the lesser included offense of trespass. Specifically, Harper requested that the jury be given his proposed Instruction D-5 which reads as follows:
The Court instructs the jury that if any person shall go upon the enclosed land of another without his consent, after being notified by such person, personally, or shall remain on such land after a request by such person to depart, he shall be guilty of trespassing.
If you believe from the evidence in this case that the offense, if any, committed by the defendant was a trespass, the form of your verdict may be:
"We, the Jury, find the defendant guilty of trespass".
The instruction purports to have been predicated upon Miss. Code Ann. § 97-17-85 (1972).
We have held above that there was evidence in the record sufficient to render unassailable a jury finding of "intent to commit some crime therein". This fact, however, in no way suggests that the evidence was so clear that the jury had no rational alternative but to so find.
At trial Harper never denied that he went to the Foster home on the night of November 11, 1982, and never denied that he went upon the premises and in fact entered the house without permission. In effect, he confessed to guilt of trespass (and, no doubt, his conduct constituted other crimes), but denied any intent to commit any crime once inside the Foster home. The defense is summed up in this question and answer while Harper was on the witness stand.
Q. What was your purpose in going through that window?
A. For my child. That's the only thing I had on my mind. I had no intention of hurting Cathy or Jeff. I just wanted to see my child before they left.
Q. There had been no threats at all prior to that time, had it?
A. No, sir, I never threatened him except whenever I was inside and he shot me.
This was testimony by Harper which the jury was entitled to weigh and *1021 consider and, if it felt it should do so, credit. Moreover, if this testimony were believed, it would establish that Harper was not guilty of burglary but only of the lesser included offense of trespass. In this context, Harper was entitled to an instruction submitting to the jury the issue of whether he was guilty of the lesser included offense of trespass.
The question is not whether the evidence was sufficient so that a rational jury could have found beyond a reasonable doubt that Harper broke into the Foster home with intent to assault but whether the evidence is so clear that no reasonable juror could have accepted Harper's theory that his intent to assault was formed after he was in the house.
Trespass, of course, is a lesser included offense to every burglary. Gillum v. State, 468 So.2d 856, 861 (Miss. 1985); Wells v. State, 305 So.2d 333, 338 (Miss. 1975); Anderson v. State, 290 So.2d 628, 629 (Miss. 1974). Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984) holds that lesser included offense instructions may be denied only where the evidence would justify a conviction on the principal charge only. The evidence in this case is not such that under Ruffin it would justify a conviction on the principal charge of burglary only.
The rule on whether a lesser included offense instruction should be given is functionally comparable to that applied when the trial judge considers whether a peremptory instruction or judgment notwithstanding the verdict should be granted, a discussion of which in the context of this Court's scope of review is found in Section III above. The only fact issues which should be taken from the jury are those with respect to which the evidence is so clear that rational jurors could not disagree. On all other material issues of fact, the jury must be instructed in the law so that they may then perform their constitutional responsibility.
The rule here, however, is the opposite of that which prevails when the defendant requests a peremptory instruction at the conclusion of the state's case. There we say that the evidence must be viewed in the light most favorable to the state and that we must accept as true all evidence supporting conviction even though that evidence may be contradicted by evidence offered by the defendant. We also give the state the benefit of all reasonable favorable inferences which may be drawn from the evidence. Conversely, in the present context, a lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
We have followed this view of when a lesser included offense instruction should be given in Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985); and Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984), see also Harbin v. State, 478 So.2d 796, 799 (Miss. 1985). Today we reaffirm the approach taken in those cases.
Gillum v. State, 468 So.2d 856, 861-62 (Miss. 1985) is readily distinguishable. The court there noted that
there was no evidence to indicate that Gillum was a casual visitor or that he entered for any purpose other than to make himself at home, to plunder and steal.
468 So.2d at 861.
Under those circumstances, applying the test stated above, the lesser included offense instruction was corrected denied. The case at bar is altogether different, however. Harper offered testimony presenting a viable alternative explanation of his presence in the Foster home. Under these circumstances, the lesser included offense instruction should have been given.

B.
One final question is nevertheless presented inasmuch as the instruction tendered *1022 by defense counsel, Instruction No. D-5 which has been quoted above, was far from perfect. Counsel for Harper tells us that the instruction was taken verbatim from the statute regarding trespass. Miss. Code Ann. § 97-17-85 (1972). The statute refers to trespass upon enclosed lands. The trespass at bar, however, was made of a dwelling and the instruction should have been tailored accordingly. The instruction also suffers from the vice of abstractness. A sentence explaining the difference between trespass and burglary would have been appropriate. The very best that may be said for the instruction at issue is that it was inartfully drawn; at worst, it was an unacceptably inadequate presentation of the lesser included offense of trespass to the jury. All of this raises the question of just what is the trial judge's duty when a defendant in a criminal case is entitled to an instruction on a particular issue and where he tenders an instruction regarding that issue which for one reason or another is unacceptable in form or content.
Newell v. State, 308 So.2d 71, 78 (Miss. 1975) is venerable authority for the proposition that the trial judge has the authority to modify instructions submitted by the parties "if, in his discretion, he concludes such to be necessary". 308 So.2d at 78. This statement appears in the context of Newell's strong policy pronouncement that in every criminal prosecution the jury should "be fully instructed as to the law in each case ... [as] the ends of justice ... require". 308 So.2d at 78. Newell and other cases, however, have sometimes been read to hold that the trial judge is not required to modify imperfect instructions. See, e.g., Ivory v. State, 336 So.2d 732, 734 (Miss. 1976).
Today we build upon the policy pronouncements of Newell augmented by suggestions originally made in Thomas v. State, 278 So.2d 469, 472-73 (Miss. 1973) and cases cited therein. Where the disputed instruction relates to a central feature of the case and where there is no other instruction before the court which treats the matter, Thomas holds it error to refuse an instruction on grounds that "it has been inartfully drawn". 278 So.2d at 472. This approach has been followed in Lee v. State, 469 So.2d at 1232 with respect to a lesser included offense instruction (which like the instruction here had been taken verbatim from the statute defining the lesser included offense) and also in Rainer v. State, 473 So.2d 172, 174 (Miss. 1985).
In the case at bar, the trespass instruction relates to a central feature of the case; indeed, the entire defense offered by Harper was that he was only guilty of trespass. No other instruction was presented to the trial judge by either the State or by Harper which treated the trespass issue. Under those circumstances assuming that the Instruction D-5 as tendered was in improper form, the trial judge at the very least, and in addition to his Newell-based authority to modify,[1] had the obligation to advise counsel for Harper of the nature of the deficiencies of the proffered instruction and afford counsel a reasonable opportunity to present a new instruction.
The record in this case reflects that after Harper requested Instruction D-5, the State objected on several bases. The trial judge sustained the objection, but nothing in the record advises us of the basis for his ruling. More to the point, the trial judge never advised counsel for Harper of the deficiencies perceived by him to lie in the instruction nor (insofar as the record reflects) was Harper given the opportunity to present a revised instruction. In these failures the trial judge fell short of the performance of his duty in such circumstances.
*1023 In summary, we hold that Harper was entitled to have the lesser included offense of trespass submitted to the jury via a properly worded instruction. The trial judge's refusal of tendered Instruction D-5, coupled with his failure to reform that instruction or advise Harper's counsel of the perceived deficiencies therein and to afford Harper counsel a reasonable opportunity to prepare another instruction, constitutes error which requires reversal. Lee v. State, 469 So.2d at 1232. Intimations, if any, to the contrary found in cases such as Gray v. State, 472 So.2d 409, 416 (Miss. 1985); Oates v. State, 421 So.2d 1025, 1030 (Miss. 1982); Bell v. State, 411 So.2d 763, 765 (Miss. 1982); and Boring v. State, 253 So.2d 251, 253 (Miss. 1971) shall stand modified.
REVERSED AND REMANDED FOR A NEW TRIAL
PATTERSON, C.J., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
ROY NOBLE LEE, P.J., and HAWKINS, J., and WALKER, P.J., dissent.
ROY NOBLE LEE, Presiding Justice, dissenting:
I do not think the trial judge committed reversible error in refusing to grant the trespass instruction requested by the appellant, or, of his own volition, to submit a modified instruction on trespass. Therefore, I dissent from the majority opinion.
Harper went to the home of his ex-wife and her husband, Foster, at 2:30 a.m., repeatedly kicked on the front door and was told by the Fosters to leave. Finally, he got in his automobile, drove off, then returned shortly, kicked in a 4' x 8' picture window and burst through it into the living room. At that time, the Fosters had returned almost to their bedroom. Foster testified:
A. [sic] Now, after you went back down the hall and heard the glass in the front window break out, what, if anything, happened at that point?
A. As I heard him coming into the house, I heard him say, "I'm going to kill you."
Q. Did he state that to whom?
A. He just stated it. There was no one in the room. He came in the front of the house and I had already reached the back of the house.
* * * * * *
Q. So what did you do then? What happened after the first shot was fired?
A. I stopped and stood in the hall where I was and he kept coming toward me, and I waited several seconds later and fired again.
Q. What happened after the second shot was fired?
A. By that time he had reached me and reached out and grabbed me; and when he did, I pushed him away into the wall and he fell on the floor.
Q. Then what happened?
A. I knelt down on top of him to hold him down and I told my wife to call the police.
The instruction D-5, refused by the court, follows:
The Court instructs the jury that if any person shall go upon the enclosed land of another without his consent, after being notified by such person, personally, or shall remain on such land after a request by such person to depart, he shall be guilty of trespassing.
If you believe from the evidence in this case that the offense, if any, committed by the defendant was a trespass, the form of your verdict may be:
"We, the jury, find the defendant guilty of trespass"
Miss.Code 1972 Annotated, Sec. 97-17-85
(D-5)
Trespass is an essential part of every burglary. The charge in the indictment was submitted to the jury, along with every element of the crime by instructions granted at the requests of the State and appellant. In my opinion, the evidence was overwhelming as to his guilt.
*1024 The record does not reflect the discussion had with reference to Instruction D-5 and does not indicate the reason for refusing the instruction. Further, there is no indication that appellant's counsel offered another instruction on trespass, or offered to modify or change Instruction D-5. The instruction was drawn under Mississippi Code Annotated § 97-17-85, which deals with trespass upon the lands of other persons. It does not state the law applicable to the facts here, and, considering that trespass is an essential part of every burglary charge, is abstract and confusing to the jury.
The majority opinion concedes that the instruction was bad, but states that the trial judge failed in his responsibility and duty to modify, correct and submit to the jury a proper instruction. I disagree. As stated above, I view the evidence in this case to be overwhelming that appellant committed the crime of burglary in breaking and entering the Fosters' house. He admits everything done by him, except he says that he didn't form the intent to assault Foster until after he had crashed through the 4' X 8' picture window and had entered the house; that previous to breaking and entering he intended only to see his child. The action taken by him negates such an intention. His conduct before and after the breaking, bears out his intent to commit an assault.
Suppose appellant had broken in the Fosters' home, gone to the child's room, seized the child and left in his automobile, then was indicted and tried for burglary of a dwelling with intent to kidnap the child. Very likely, his defense would have been "I broke in the building with the intent to get Foster but, when I got inside, I changed my mind and took the baby." What appellant did in breaking in the Foster home and assaulting Foster speaks louder than what he said he intended to do, viz, see the child. Under those facts, in my opinion, he was not entitled to a trespass instruction, the evidence of guilt was overwhelming, and no rational jury could have returned a verdict other than guilty as charged.
Newell v. State, 308 So.2d 71 (Miss. 1975), held, insofar as it relates to the question here, that the trial judge himself may initiate appropriate written instructions, in addition to the approved instructions submitted by the litigants, if, in his discretion, he deems the ends of justice so require. Also, the trial judge may modify the instructions submitted by the litigants for his approval, if, in his discretion, he concludes such to be necessary. The case specifically held that the trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so. I do not interpret Newell to lay down the policy that a trial judge is mandated to draw, modify, or submit instructions on behalf of any party in a lawsuit. Ivory v. State, 336 So.2d 732, 734 (Miss. 1976). The slight erosion of Newell in Lee v. State, 469 So.2d 1225 (Miss. 1985) and Fairchild v. State, 459 So.2d 793 (Miss. 1984), becomes a complete erosion by the present majority opinion.
However, in Lee v. State, supra, Justice Robertson admitted that this Court has repeatedly held lesser-included offense instructions should not be indiscriminately granted, and that they should be submitted to the jury only where there is an evidentiary basis in the record for them. Further, Lee v. State stated that
In addition, Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984), has expressly held that only where the evidence could only justify a conviction on the principle charge should a lesser-included offense instruction be refused.
469 So.2d at 1231.
In Bell v. State, 411 So.2d 763 (Miss. 1982), Bell assigned as error that the lower court erred in failing to assure that he received a fair trial. We said:
Appellant argues that the lower court should have granted him an instruction to the effect that the testimony of accomplices should be viewed with great care and caution and that an alibi instruction should have been granted. Appellant did not request the lower court to grant him either of the mentioned instructions. *1025 The trial judge specifically asked counsel for appellant whether he had an alibi instruction and counsel replied that he did not. Appellant contends that because the court did not grant the instruction of its own volition, he was not assured a fair trial.
In Newell v. State, 308 So.2d 71 (Miss. 1975), this Court held that the trial judge may give appropriate instructions in addition to those submitted by litigants in the case, if, in the exercise of his discretion, he considers the ends of justice require it. Further, Newell held that the lower court may not be put in error for failure to instruct the jury on any point of law unless specifically requested in writing to do so. (308 So.2d at 78). The rule stated in Newell has been approved many times and, in our opinion, is good law today.
We are of the opinion that there is no merit in this assignment of error.
411 So.2d at 765.
Mississippi law and decisions of this Court do not, in my opinion, require, permit, or justify placing the trial judge in this case in error. Therefore, I dissent from the majority opinion.
WALKER, P.J., joins this dissent.
HAWKINS, Justice, dissenting:
I join the dissent of Justice Roy Noble Lee that this case should be affirmed.
The majority has gone beyond the facts of this case to announce a new principle of law, and in my view, bad law. An unnecessary burden has been placed upon the circuit judge, one that will create more problems than it will solve.
Under Rule 5.03 of the Uniform Criminal Rules of the Circuit Court, it is the duty of counsel to submit at least 24 hours ahead of trial all proposed instructions. At the conclusion of trial, the judge in chambers goes over the prepared instructions and asks for objections. If opposing counsel has any objection, he is under a duty to dictate into the record specific objections, and specifically point out his grounds for objecting. The pertinent sentence of this rule states:
At the conclusion of the taking of the testimony the attorneys shall dictate into the record their specific objections to the requested instructions and specifically point out the grounds for objection.
Failure to make a specific objection constitutes waiver of any objection by opposing counsel. The pertinent sentence of Rule 42 of the Supreme Court Rules states:
It is, therefore, the rule of this Court that no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection is made to the instruction in the trial court stating the particular ground or grounds for such objection. [Emphasis added]
This rule is firmly embedded in the decisions of our Court. See: Clark v. State, 260 So.2d 445 (Miss. 1972); Maness v. Illinois Central Railroad, 261 So.2d 460 (Miss. 1972); Proctor v. State, 267 So.2d 99 (Miss. 1972); Lumpkin v. State, 413 So.2d 386 (Miss. 1982); Goss v. State, 413 So.2d 1033 (Miss. 1982); Ross Cattle Co. v. Lewis, 415 So.2d 1029, 1035 (Miss. 1982); Smith v. State, 434 So.2d 212 (Miss. 1983); Shelton v. State, 445 So.2d 844 (Miss. 1984); Booker v. State, 449 So.2d 209, 218 (Miss. 1984); Billiot v. State, 454 So.2d 445, 462 (Miss. 1984); Stong v. Freeman Trucklines, Inc., 456 So.2d 698, 704 (Miss. 1984).
Moreover, it is significant what we stated in the following cases:
In Oates v. State, 421 So.2d 1025, 1030 (Miss. 1982), we stated:
There are three basic considerations which underlie the rule requiring specific objections. It avoids costly new trials. Boring v. State, 253 So.2d 251 (Miss. 1971). It allows the offering party an opportunity to obviate the objection. Heard v. State, 59 Miss. 545 (Miss. 1882). Lastly, a trial court is not put in error unless it had an opportunity to pass on the question. Boutwell v. State, 165 Miss. 16, 143 So. 479 (1932). These rules apply with equal force in the instant *1026 case; accordingly, we hold that appellant did not properly preserve the question for appellate review.
In Palmer v. State, 427 So.2d 111, 115 (Miss. 1983), we held:
Our firmly established rule is that objections to instructions in the trial court must be specific and not general so that the trial judge has the opportunity to rule on the particular grounds relied on. Matters not brought to the attention of the trial court for correction may not be raised on appeal, except jurisdictional matters.
In Williams v. State, 445 So.2d 798, 807 (Miss. 1984), Justice Prather significantly stated:
Generally, it is the rule of This Court that no assignment of error involving the giving of an instruction to the jury will be considered on appeal unless a specific objection to the instruction was made in the court below. Miss.Sup.Ct.Rule 42. Moreover, the ground relied upon in the assignment of error should be one of the grounds stated in the objection to the lower Court. Minor v. State, 379 So.2d 495 (Miss. 1979); Entrican v. State, 309 So.2d 851 (Miss. 1975). Perhaps, the best single explanation of the principles undergirding Rule 42 is stated in Rayburn v. State, 312 So.2d 454 (Miss. 1975), wherein the Court stated:
It is essential that specific objections to instructions be made to the trial judge, in order that errors and omissions may be corrected or supplied before any possible harm can result. A defendant may not tacitly reserve an objection at that point, or want until after a guilty is returned, meanwhile having availed himself of the chance to be acquitted, or call attention to an omission or error for the first time on appeal in order to have his conviction set aside.
[Id. at 455]
To further the practice of what we consider to be an important and necessary rule, we decline to address this issue on its merits for it is procedurally barred.
Since opposing counsel is under a duty to specifically point out what is wrong with each and every instruction to which he has any objection, why should this Court place upon the circuit judge the burden to repeat the objection in sustaining the objection?
If opposing counsel does not object, and apprise the court and counsel opposite specifically his reason therefore, the instruction should be given. In some unusual situation where opposing counsel has not objected, or has not specifically pointed out his reason therefore, and the circuit judge himself perceives a flaw in the instruction rendering it unacceptable, of course the circuit judge should inform counsel the specific reason he will not give the instruction. In such an unusual case, while opposing counsel has indeed waived any error from the flawed instruction, neither should a circuit judge be criticized for seeing that the jury is properly instructed. The point, however, is only in such an unusual case when the judge himself, absent the proper objection, refuses to grant the instruction should he be under any affirmative duty to apprise counsel what is wrong with his instruction.
A proposed instruction is analogus to a question to a witness to which an objection has been made, and the reason for the objection specifically given. In such a circumstance, if the trial judge sustains the objection, he is under no duty to tell counsel why he is sustaining the objection. Presumably it is for the reason opposing counsel gave. Likewise, when the ground for an objection to an instruction has been specifically made, and the judge refuses the instruction, why should he be under the additional duty to repeat the reason for refusing the instruction precisely what the opposing counsel has just stated?
On appeal, we would simply decide whether error was committed based upon the reason given in objecting.
If the objection was that the instruction was on a wrong legal principle, and could not be corrected, then our review would be *1027 based on whether the instruction was in fact bad law.
On the other hand, if counsel is entitled to an instruction on a certain principle of law, but the instruction is improperly worded, then opposing counsel's specific objection will certainly apprise counsel that his proposed instruction can be corrected. If the circuit judge refuses the instruction on this objection, trial counsel, not the circuit judge, is under the duty to correct his own instruction. Frequently, circuit judges may in such circumstances on their own make a correction by interlineation or striking words, but the circuit judge should never be put at fault for failing to do so. And, this Court should never impose on a circuit judge the duty in such a case of correcting an instruction.
The trial record in this case reveals the following as to Instruction D-5:
BY MR. WINGATE:
We object to D-5, Your Honor, because of the way it's phrased and that it's confusing to the Jury that this is a lesser included offense of burglary. They make it  the way the instruction is written it appears that this is a definition of the offense itself. In addition, we object to Mississippi Code annotated at the bottom.
BY THE COURT:
Yes, sir, that would be inappropriate.
BY MR. WINGATE:
And is abstract in the second paragraph, and does not determine exactly what conduct would constitute a trespass as opposed to a conduct which would constitute a burglary.
(OFF-RECORD ARGUMENT)
BY MR. WINGATE:
Your Honor, for the record, we have no objection to counsel trying to redraw D-5.
BY MR. JONES:
Your Honor, could I ask them specifically to what part they object? It's from the Code section word for word.
BY MR. WHITTEN:
Your Honor, the Supreme Court has made clear in the cases on jury instructions that the instructions have to tailor themselves to the individual facts of the case. It's not enough to have one instruction that you could go in and draw on top of every case. So in the essence of any kind of amendment or modification of this to state what he did that they would claim would be a trespass, the state would have to object to this being open ended and allowing the Jury to conjecture on what the instruction is talking about.
(OFF-RECORD ARGUMENT)
BY THE COURT:
I have already denied the instruction. I mean y'all can keep arguing it if you want to.
BY MS. WHITTEN:
We just do not want to foreclose Mr. Jones' ability to present his theory of his case to the Jury. We just would like to make an offer that he tailor it to what the correct law is on the instruction.
BY THE COURT:
Of course, that's up to him. I'm not  in the present form of the instruction I'm going to have to deny it.
It is perfectly apparent from the above record that the state did not object to this instruction because Harper was not entitled to a lesser included offense instruction under the law, but that the instruction was in the abstract. It was not rejected because it advanced the wrong principle of law, but it was improperly, or inadequately, worded. Wingate said the instruction was in the abstract, Whitten that the instruction should be tailored to the facts of the case; in other words, state the facts from the evidence in the case upon which the principles of the law of trespass could be embraced by an instruction.
Of course, we do not know what was stated off the record, but in the record, the state and the trial judge informed counsel that the instruction as written could not be given, but he had every opportunity to correct it.
*1028 In my view it was trial counsel's duty to correct his instruction. But, this Court states it was the judge's duty. The majority makes the following statement:
More to the point, the trial judge never advised counsel for Harper of the deficiencies perceived by him to lie in the instruction nor (insofar as the record reflects) was Harper given the opportunity to present a revised instruction.
As to the first part of this statement by the majority, my reply is that the judge had no duty to make anything that was already abudantly clear any clearer. As to the latter part, this simply is not true. Opposing counsel and the circuit judge clearly told Harper's counsel he could submit another instruction if he wanted to. How can the majority state Harper was never given the opportunity to present a revised instruction?
The majority concedes, as it must, that the instruction as requested was properly refused, and that the factual underpinnings should have been set forth therein. Since the majority is putting the duty on the circuit judge to write the proper instruction, I think the very least they could do would be to write it themselves.
I also think both the majority and Judge Roy Noble Lee have unnecessarily engaged the question of whether Harper was entitled, as a matter of law, to any lesser included offense instruction. As the record shows, the state never contended at trial that Harper was not entitled to any lesser included offense instruction, provided it was properly worded. Manifestly, the state made no objection on the specific ground that Harper was not entitled to any lesser included offense instruction. The question, therefore, is not before us, and I can see no reason to discuss it.
We have but one narrow question: was this circuit judge obligated to do more than he did in this case insofar as seeing that a properly worded lesser included offense instruction was submitted to the jury. From the record in this case, it is my view that the circuit judge fulfilled his responsibility.
WALKER, P.J., Joins this opinion.
NOTES
[1] We emphasize that nothing said in this opinion waters down the authority of the trial judge, recognized in Newell, to

initiate and give appropriate written instructions in addition to the approved instructions submitted by the litigants if, in his discretion, he deems the ends of justice so require.
308 So.2d at 78
Indeed we encourage that our trial judges will exercise that authority in appropriate cases.