# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00768-SCT

*JAMES JUSTIN GOODNITE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/19/2000 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM DAVIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/25/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/15/2001 |

### BEFORE BANKS, P.J., WALLER AND COBB, JJ.

### BANKS, PRESIDING JUSTICE, FOR THE COURT:

¶1. This case is before the Court on appeal from a conviction and sentence for touching a child for lustful purposes and sexual battery. Because the trial court did not abuse its discretion with regard to jury instructions and the evidence is sufficient to support a guilty verdict, we affirm.

### I.

¶2. In December of 1997, "G.E." lived in a mobile home park with his wife and his two children from a previous marriage, "C.E.", then age eight, and "M.E.", then age six. James Justin Goodnite ("Goodnite") lived next to G.E. with his wife and child. G.E.'s wife began suffering complications with her pregnancy and was hospitalized in Mobile, Alabama. G.E., wanting to visit his wife after work, asked Goodnite to baby-sit the kids at night when he was absent. During this period C.E. stayed with Goodnite twice and M.E. stayed with Goodnite four to five times.

¶3. Around January 7, 1998, G.E.'s wife returned from the hospital. A few days later, C.E. attempted to discuss something with G.E., but she was unclear about what she was attempting to tell him. A few days after that incident, C.E.'s friend Savannah Robinson ("Robinson") informed G.E. that C.E. told her that Goodnite touched C.E. and M.E. in inappropriate places. G.E. took M.E. for a drive and questioned him about the situation, M.E. told his father that Goodnite "this and that happened" and that Goodnite "sucked his penis." G.E. testified that as he continued to question M..E., M.E. became very fidgety and nervous and would not talk to him about the incident anymore. When he returned home, G.E. first called his sister and then called the Harrison County Sheriff's Department.

¶4. M.E., then eight-years old at the time of the trial, testified that he stayed with Goodnite two or three times while his father was commuting to Mobile. He stated that on the night of the incident Goodnite left the den and went into his bedroom. When Goodnite returned he was wearing "fancy, shiny, green underwear" and he asked C.E. and M.E., "Do you want to see my private parts?" Goodnite then told M.E. that he wanted to show him something and asked him to come into the bedroom with him. When M.E. went into the bedroom, Goodnite told him to pull down his pants and M.E. told him no. Goodnite then forced M.E. to pull down his pants and he performed fellatio on M.E. for a "few minutes." After Goodnite stopped, they went into the other room with C.E. Goodnite later told M.E., "If you tell somebody I will like hurt you."

¶5. C.E. was in the other room lying on the couch with covers on top of her. M.E. testified that Goodnite wanted C.E. to push the covers aside. He also stated that he saw Goodnite pinch C.E. between her legs.

¶6. C.E., ten years old at the time of the trial, testified that on the night of the incident, she, Goodnite, and M.E. were watching movies. She stated that Goodnite went into his bedroom and returned wearing only a pair of green panties. She then testified that Goodnite asked, "Do you want to see my private parts?" After she told him no, she covered her head with the covers, and Goodnite exposed himself. She stated that Goodnite and M.E. went into Goodnite's room for two to three minutes.

¶7. C.E. stated that when Goodnite returned he told her that it was her turn to show her private parts and tried to get her from under the covers. Goodnite then pinched her between her legs, as he pinched her she kicked at him and told him to stop. Goodnite told C.E. that she should not tell her father because he would be mad at Goodnite.

¶8. A few days after the incident C.E. told her friend about the incident who in turn informed G.E. C.E. then told her father what occurred with Goodnite. Several days later, law enforcement officials went to C.E.'s school and asked her to identify a pair of green ladies underwear. C.E. identified the underwear as the underwear Goodnite wore on the night of the incident.

¶9. Investigator Robert Cox ("Cox") investigated the allegations against Goodnite. Cox stated that during the course of his investigation Goodnite's wife gave him a pair of green underwear which she identified as belonging to her. C.E. subsequently identified this underwear as the garment worn by Goodnite. Cox testified that M.E. stated that he was too embarrassed to discuss what happened to him.

¶10. Goodnite testified that the pair of underwear belonged to his wife, however, he denied wearing the underwear in front of the children. He also denied performing fellatio on M.E. or fondling C.E. Goodnite stated that he did not "roughhouse" with the children and the only time he had physical contact with the children is when he placed them in the corner.

¶11. At the close of the State's case, Goodnite moved for a directed verdict on both counts of the charges. Following closing arguments, the jury returned a verdict of guilty on both counts. Goodnite was sentenced to 17 years on the count of touching a child for lustful purposes and eight years for the count of unlawful touching, with the sentences running consecutively for a total of twenty-five years. Goodnite made a motion for a new trial which was denied by the trial court.

## II.

¶12. Goodnite asserts that in light of the trial court's determination that the children were competent to testify, it was error for the court to refuse to instruct the jury regarding the children's testimony. He contends

that because there was no corroborating evidence of the incident and the other testimony was based on what the children said, an instruction regarding the children's testimony is necessary.

¶13. This Court has held that the "unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime." *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998). Goodnite also recognizes that this Court has been hesitant to instruct the jury to view the testimony of a child of tender years with caution. *Robinson v. State*, 662 So.2d 1100, 1105 (Miss. 1995); *Bandy v. State*, 495 So.2d 486, 493 (Miss. 1986) (overruled on other grounds). Nevertheless, Goodnite suggests that, because determining the competency of a child is such a difficult task, these examinations should occur at a much earlier period of the process instead of at trial.

¶14. Specifically, Goodnite argues that the trial court erred in refusing proffered instructions D-9 and D-11 which informed the jury to consider the testimony of a child of tender years with caution and to scrutinize the uncorroborated testimony of a victim. Goodnite urges this Court to create a new precedent allowing and encouraging trial courts to so instruct juries in cases where the uncorroborated testimony of a child is the only evidence against a defendant.[1]¶15. Proffered Defense instruction D-9 stated:

> The Court instructs the Jury that uncorroborated testimony of a child or children of tender years should be viewed with caution.

and D-11 read:

> The Court instructs the Jury that the uncorroborated testimony of a victim should be examined closely and scrutinized with caution.

¶16. The State urges that even though C.E. could not corroborate that Goodnite performed fellatio on M.E., C.E. could corroborate that Goodnite took M.E. into the bedroom and they stayed in the bedroom for a few minutes. The State asserts that the instructions regarding corroboration and the witnesses incompetency due to age were not supported by evidence and were properly denied, because each child's testimony tended to corroborate that of the other. Thus the testimony was not "uncorroborated."

¶17. We agree. Both children testified that Goodnite entered the room wearing only green underwear. Both children stated that Goodnite asked them whether they would like to see his "private parts." Both children testified that Goodnite pinched C.E. between her legs. ¶18. Assuming arguendo, that the testimony is uncorroborated, these instructions would not be warranted.

¶19. In *Bandy v. State*, 495 So.2d at 492, this Court in reviewing an instruction containing the language "with great caution" in a child fondling case observed that :

> ...the language of the instruction, in telling the jury to view L.H.'s testimony "with great caution," sets out the same standard given to the jury for evaluating the testimony of accomplices and co-defendants. The instruction is given in those cases because of the inherent mistrust of those witnesses' veracity. That is not necessarily the case with a child witness. In that case, it is not presumed that the child may be dishonest, but simply that he or she may not have the capacity to understand sufficiently or remember correctly the events to which he or she is testifying. A child's testimony should not be viewed with a jaundiced eye as to whether or not the child is truthful--a child may be presumed to be

as truthful as any other witness. If the jury is to be instructed at all with respect to the testimony of a child, it should be told to view the testimony in the light of the child's age and understanding, not his veracity.

*Id.* This Court reiterated that pronouncement in ***Jones v. State***, 606 So.2d 1051, 1060 (Miss. 1992), when holding that instructions that tend to comment on the truthfulness of the child's testimony should be rejected. *See also* ***Robinson v. State***, 662 So.2d 1100, 1105 (Miss. 1995); ***Ivy v. State***, 522 So.2d 740, 743 (Miss. 1988). This assignment of error is without merit.

## III.

¶20. Goodnite asserts that it was error for the trial court to refuse proffered instruction D-6 which provided for a lesser-included offense of simple assault. Because M.E. and C.E. testified that he pinched C.E., Goodnite argues, a lesser-included offense instruction for simple assault was necessary. ***Perry v. State***, 637 So.2d 871, (Miss. 1994). He contends that the test for whether a lesser-included offense instruction is whether it is warranted by the evidence. ***Harveston v. State***, 493 So.2d 365 (Miss. 1986). Further, Goodnite cites ***Harper v. State***, 478 So.2d 1017, 1021 (Miss. 1985) for the language as follows:

[A] lesser-included offense instruction should be granted unless the trial judge -- and ultimately this Court -- can say, taking the evidence in the light most favorable to the accused, and considering all favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of the principal charge.

*See also* ***Harbin v. State***, 478 So.2d 796 (Miss. 1985). Goodnite submits that simple assault is a lesser-included offense of touching of a child for lustful purposes because the missing element is the purpose for touching. Lastly, Goodnite urges that regardless of the fact that he denied the act, he is entitled to instructions that have any foundation in the facts and are correct statements of the law. *See, e.g.,* ***Hopson v. State***, 625 So.2d 395 (Miss. 1993).

¶21. The State argues that there is no evidence supporting simple assault. It argues further, that simple assault is not a lesser-included offense of the offense of touching a child for lustful purposes. *See* Miss. Code Ann. § 97-5-23(1)(2000).

¶22. Miss. Code Ann. § 97-5-23 provides a person eighteen years of age or older who, who for the purpose of gratifying his lust or for the purpose of indulging licentious sexual desires, touches, handles rubs with his hands or any part of his body or member thereof a child under the age of sixteen years, with or without the child's consent is guilty of touching a child for lustful purposes. *Id.* Miss. Code Ann. § 97-3-7 (2000), provides that a simple assault is committed where a person attempts to cause or purposely, knowingly or recklessly causes bodily injury to another, or where he negligently causes bodily injury with a deadly weapon or other means likely to produce death or serious bodily harm, or attempts by physical menace to put another in fear of serious bodily harm. ***Id.***

¶23. Fondling involves and requires proof of offensive touching. The State contends that it is distinguishable from simple assault because simple assault requires offensive touching that must cause bodily injury and that bodily injury denotes physical pain, illness or any impairment of physical condition, ***Murrell v. State***, 655 So.2d 881, 884 (Miss. 1995). The State notes that fondling, denotes sexual gratification and while

emotionally uncomfortable does not necessarily cause bodily injury. It argues that there is no evidence to support a simple assault instruction. *See Ormond v. State*, 599 So.2d 951, 960 (Miss. 1992).

¶24. Our law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such. *Turner v. State*, 732 So.2d 937 (Miss. 1999). This Court has also held that instructions must be warranted by the evidence and should not be indiscriminately granted. *Mease v. State*, 539 So.2d 1324, 1330 (Miss. 1989). To warrant the lesser-included offense instruction, a defendant must point to some evidence in the record from which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense. *Toliver v. State*, 600 So.2d 186, 192 (Miss. 1992).

¶25. Applying the test provided in *Harper*, to the evidence before the jury, we conclude that this argument is without merit. *Id.* at 1021. Even if the jury could conclude that Goodnite pinched C.E. between the legs, that none of the evidence appears to have warranted finding Goodnite guilty of simple assault which involves an attempt to cause bodily harm.

¶26. The trial court denied the proffered instruction for a lesser-included offense based on "absolute denial by the defendant in the matter," and reasoned that the granting of simple assault was not supported by the record. The fact that Goodnite denied that anything at all happened does not end the inquiry into whether he was entitled to a lesser-included offense instruction. *See Perry*, 637 So.2d at 877 (reversing and remanding judgment for inclusion of lesser-included offense reasoning that evidence supporting the lesser-included instruction need not be espoused by the defendant). This Court must make a determination of whether the evidence in the record is such that a fair-minded juror could harbor a reasonable doubt whether the pinch was for something other than a lustful purpose.

¶27. C.E.'s testimony indicated that Goodnite attempted and succeeded in pinching her in her "private parts." We conclude that a reasonable jury viewing the evidence favorable to Goodnite could not harbor a doubt that the pinch was for anything else other than a lustful purpose. We hold that the evidence did not support an instruction for simple assault.

## IV.

¶28. Goodnite asserts that the testimony of a single witness should not be sufficient to sustain a conviction in the absence of some corroboration, especially where the alleged victim is a child and the charge is uncorroborated. Goodnite claims that there is not enough competent evidence in the instant case to support the jury's verdict.

¶29. This Court has held that the standard of review for a denial of directed verdict and judgment notwithstanding the verdict is identical. *Coleman v. State*, 697 So.2d 777, 787 (Miss. 1997). When reviewing the sufficiency of the evidence, this Court looks to all of the evidence before the jurors in the light most favorable to the verdict to determine whether a reasonable, hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. *Jackson v. State*, 614 So.2d 965, 972 (Miss. 1993). This Court will not reverse a trial judge's denial of a motion for a new trial unless the verdict is so contrary to the weight of the evidence that, if it is allowed to stand it would sanction an unconscionable injustice. *Coleman*, 697 So.2d at 787.

¶30. We have already addressed the issue of corroboration. Reviewing the evidence in the light most

favorable to the verdict, Goodnight put on green underwear and asked the children if they wanted to see his privates. Goodnite took M.E., a six-year old child, into the bedroom and performed fellatio on him. Goodnite returned to the room where C.E., an eight-year old child, was and told her it was time to show her privates, told her that "it" was pretty, and proceeded to pinch her between her legs. Clearly, a reasonable person could have found beyond a reasonable doubt that Goodnite was guilty of the two charges presented in the indictment. The trial court's denial of Goodnite's request for judgment notwithstanding the verdict and motion for new trial will not be disturbed.

## V.

¶31. For the foregoing reasons, the judgment of Harrison County Circuit Court is affirmed.

¶32. **COUNT I: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF EIGHT (8) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF SEVENTEEN (17) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY FOR TWENTY FIVE (25) YEARS.**

> **PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**

1. The State suggests that Goodnite's first assignment of error encompasses two arguments. The first argument concerns the propriety of cautionary instructions regarding the testimony of child witnesses. The other argument concerns the trial court's determination that M.E. was competent to testify. The State contends that because Goodnite never objected to the competency of M.E.'s testimony, this error is procedurally barred. ***Rhymes v. State***, 356 So.2d 1165 (Miss. 1978). We agree that to the extent that Goodnite asserts this issue here he failed to object to M.E.'s testimony at trial on the basis of competency.