478 So.2d 302 (1985)
Travis BYRD, Individually and as Administrator of Estate of Clarence Ira Byrd, Deceased
v.
Paul R. McGILL.
No. 54879.
Supreme Court of Mississippi.
October 23, 1985.
Donald C. Dornan, Jr., Denton, Persons, Dornan & Bilbo, Biloxi, William D. Bethea, III, Gulfport, for appellant.
Jerry O. Terry, Greaves, Terry & Sheely, Gulfport, for appellee.
En Banc.
ANDERSON, Justice, for the Court:
This is an appeal from the Circuit Court of Harrison County, First Judicial District.
Paul McGill, a farmer, owned a 35-acre man-made lake in rural Harrison County. He allowed the general public to fish in this lake at $2 per day. He owned several boats, and on request he would rent them out to fishermen for an additional $1. Although he owned life preservers, he did not give them out to boaters, except on request.
*303 At about midday on February 21, 1981, Clarence Ira Byrd and two companions, Murray Alexander and Dennis Townley, appeared on McGill's premises, paid the fishing and boat rental fees and were assigned a 12-foot fiberglass skiff. This boat contained no life jackets, paddles, or lights. At some time during the afternoon the three decided to set out "trot lines" in the lake, and left to get the appropriate equipment. While on this errand they obtained two six-packs of beer, some of which they consumed that afternoon. After returning to the lake and setting the trot lines, they left for a second time. This time they went to two local taverns where they played pool and consumed an undetermined amount of beer. After midnight, they returned to the lake and embarked in the boat to check the trot lines. After a few minutes the boat suddenly filled with water and sank. Alexander and Townley reached the shore safely, but Clarence Ira Byrd drowned. The two survivors went to McGill's house to summon help. County officials dragged the lake for two days before finding Byrd's body in an estimated 8 to 10 feet of water. The boat was never recovered.
Plaintiff Travis Byrd, father and executor of the decedent, filed an action for wrongful death. At the close of the trial, the jury returned a verdict for defendant McGill. Judgment was entered accordingly. From this judgment, Byrd appeals.
The only assignment of error that merits discussion is:
WHETHER THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY CONCERNING THE DEFENDANT'S VIOLATION OF THE MISSISSIPPI BOATING SAFETY STATUTE.
Appellant's counsel submitted Instruction P-6, which would have charged the jury that McGill must be found negligent per se if the jury found that he had failed to furnish life jackets, paddles and lights on his boats. The trial judge refused this instruction and based his charge to the jury on general common law negligence principles. Plaintiff's Instruction P-6 stated:
The court instructs the jury that the owner or operator of a vessel capable of transportation upon water has a duty under the law of the State of Mississippi to provide such vessel with a Coast Guard approved life preserver for each person aboard, a paddle and during the hours of darkness, a light sufficient to make the vessel's presence and location known within a reasonable distance.
The court instructs you that if you find from a preponderance of the evidence in this case that the defendant, as owner of the skiff in which Clarence Ira Byrd was a passenger immediately prior to his drowning, failed to provide a Coast Guard approved life preserver, paddle or light, then the court tells you that the defendant was guilty of negligence as a matter of law. If you further find that such negligence, if any, on the part of the defendant constituted the proximate cause or a contributing proximate cause of the accident and death of the decedent, then it is your sworn duty to return a verdict in favor of the plaintiff.
Counsel for appellee McGill objected to this instruction stating that the statute in question imposed the duty on both the owner and the operator, not just the owner. Clarence Ira Byrd, the deceased, he insisted, was an operator within the statute's terms. We agree that the instruction is flawed. The implicit finding that Byrd was a passenger was erroneous, because under these facts the jury could find that he was an operator. Nevertheless, we hold that the jury should have been instructed on the issue of negligence per se and because it was not, we reverse.
Mississippi Code Annotated, Section 59-21-81 (1972), on which Instruction P-6 was based reads as follows:
Every vessel shall have on board a Coast Guard approved personal flotation device for each person aboard such vessel, and during the hours of darkness, lights which comply with all federal regulations applicable to such vessels of such classification. Such vessels shall not be operated unless in a safe and seaworthy condition; *304 the owner and operator shall employ such safety devices as may be necessary for the safe operation of such vessel, including an efficient natural or mechanical ventilating system when necessary for safe operation. In addition to the requirements imposed by this section, all vessels shall comply with all federal regulations applicable to vessels of such classification.
Appellant, through his instruction, further argued that whenever this duty is violated, the actor is subject to civil liability under the provisions of MCA § 59-21-157 (1972), which reads:
The owner or operator of a vessel or boat shall be civilly liable for any injury or damage proximately resulting from the negligent failure of such owner or operator to comply with any of the provisions of this chapter.
The appellant contends that these two statutes, when taken together, subject McGill to the guilt of negligence per se for violation of the statute.
Section 59-21-3 defines the term "vessel" as "every description of water craft, other than seaplane on the water used or capable of being used as a means of transportation on water." That section also describes "operator" as "the person who operates or who has charge of the navigation or use of a ... vessel."
Appellee contends that the statute intended to place the owner and the operator on an equal footing with regard to liability, depending on whose conduct actually violated the statute. He complains that the proposed instruction, by ignoring the fact that Byrd may have been an operator, would have kept the jury from considering the question of Byrd's duty as an operator. We agree but that does not end the inquiry as to whether the jury should have been instructed on negligence per se.
Appellee also contends that there was no possible basis for the jury to conclude that the absence of a life jacket caused or contributed to the decedent's death by drowning. This argument is contrary to reason, and we reject it.
Appellant's response to the argument concerning the equal liability of owner and operator is that Mississippi is a pure comparative negligence state. Therefore, McGill cannot exonerate himself completely merely by stating that his potential liability is not exclusive. This argument is well taken, considering our holding in Winfield v. Magee, 232 Miss. 57, 98 So.2d 130 (1957). In Winfield we expressly rejected the argument that a plaintiff's violation of a statute bars his recovery:
In this connection appellant argues that the driver of the pulpwood truck was violating the law in having a portion thereof on the left side of the road, contrary to Section 8181, Code of 1942. But under our comparative negligence statute we are of the opinion that this would only be contributory negligence which would cause the damages to be reduced and a mere violation of the law in the operation of a motor vehicle would not entitle the opposite party to a peremptory instruction. This was held in the case of Terry v. Smylie, 161 Miss. 31, 133 So. 662.
See also, Prosser & Keeton, The Law of Torts, § 36 at 232 (5th ed. 1984). Appellee's rejoinder that the plaintiff received a separate instruction on comparative negligence misses the point, since that instruction did not deal with the effect, if any, of that doctrine on negligence per se.
The undisputed evidence adduced at trial was that appellee failed to provide the statutorily required life preserver when he rented the subject skiff to the decedent and his companions. This omission occurred in spite of the fact that appellee did have life preservers available but would only provide them upon specific request. Members of the public and the decedent and his companions did not know of this availability. As a result of this clear violation of the above safety statute by the appellee, the doctrine of negligence per se is applicable. This doctrine is well known to the jurisprudence of this state and provides that one who violates the provisions of a statute is per se negligent, without need for showing *305 that the putative tort feasor maintained an actual lack of reasonable care. The statute itself is deemed a conclusive expression of the applicable standard of reasonable conduct as pronounced by legislative enactment.
Clarence Ira Byrd fell squarely into the class of persons sought to be protected by the above statute, that is, users or passengers in a boat or vessel which was being operated on waters of the State of Mississippi for a consideration. See, Stong v. Freeman Truck Line, Inc., 456 So.2d 698 (Miss. 1984); Haver v. Hinson, 385 So.2d 605 (Miss. 1980); U-Haul Co. v. White, 232 So.2d 705, 708 (Miss. 1970). The harm which resulted to him, drowning, is of the very type sought to be prevented by passage of MCA § 59-21-81. Thus, appellant was entitled to have the jury instructed on this point.
Of course, negligence per se refers to defendant's duty which must also be shown to have been breached with proximately resulting damage. Instruction P-6 properly announced the duty and left the remaining questions to the jury. Thus, it was up to the jury to determine if the appellee's undisputed breach of the statutorily imposed duty caused or contributed to the death of Clarence Ira Byrd.
The result of the refusal of Instruction P-6, coupled with the failure of anyone to substitute a more suitable instruction, was that the jury entered their deliberations unaware that there was such a thing as negligence per se. Much less, did they know that it had any bearing on the case. In Newell v. State, 308 So.2d 71 (Miss. 1975), we observed that:
On occasion juries have been left uninstructed due to the oversight, omission or ineptness of attorneys.... Regardless of the reason, the fact remains that juries are at times left groping blindly, though honestly, for the law of the case to aid them in arriving at a verdict. (308 So.2d at 74.)
In Thomas v. State, 278 So.2d 469 (Miss. 1973), we emphasized that where an instruction relates to a central feature of the case and where there is no other instruction before the court which treats the matter, it is error to refuse an instruction on the grounds that "it has been inartfully drawn." 278 So.2d at 472. See also Lee v. State, 469 So.2d 1225 (Miss. 1985), and Rainer v. State, 473 So.2d 172 (Miss. 1985).
Today we expand on Newell, Thomas and Lee by following the dictates of Harper v. State, 478 So.2d 1017 (1985), where we declared:
... unequivocally that where under the evidence a party is entitled to have the jury instructed regarding a particular issue and where that party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new, corrected instruction. Where the trial judge fails in this duty and where the proffered instruction relates to a central issue in the case which is not covered by any other instructions given to the jury, we will reverse.
Although Harper and the other cited cases arose from criminal cases, there is no good reason for countenancing the evils they condemn merely because they arose in a civil action.
The judgment of the circuit court must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
ROY NOBLE LEE, and WALKER, P.JJ., and HAWKINS and DAN M. LEE, JJ., dissent.
ROY NOBLE LEE, Presiding Justice, dissenting:
The majority opinion concedes that the Instruction P-6, which was requested by *306 appellants and refused by the court, was a bad (flawed) instruction. The appellants did not request another instruction on negligence per se.
I do not believe that the law of this state or decisions of this Court place the onus upon the trial judge to prepare litigants' cases for them. I adopt my dissent in Harper v. State, Miss. 478 So.2d 1017 (1985), and likewise, dissent from the majority opinion in this case.
WALKER, P.J., and HAWKINS and DAN M. LEE, JJ., join this dissent.