553 So.2d 37 (1989)
Samuel SIMPSON (Sampson Smith)
v.
STATE of Mississippi.
No. 07-58866.
Supreme Court of Mississippi.
November 15, 1989.
Jon M. Barnwell, Greenwood, for appellant.
Mike C. Moore, Atty. Gen. and Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and BLASS, JJ.
SULLIVAN, Justice, for the Court:
Shelly Myles, a Belzoni, Mississippi, businessman had approximately $17,000.00 in his truck on the night of March 28-29, 1986, in Belzoni, Mississippi. It was his practice to store money in his truck at night as he thought the truck would not be suspected as a depository. On this occasion the "hide in plain sight" theory failed to work.
At approximately 4:00 a.m. on the morning of March 29, 1986, Myles went outside and found that his truck had been burglarized. The vent window was broken out on the driver's side and all of the money was gone with the exception of some loose change. Myles called the Belzoni Police Department and Officer Hughes arrived on the scene at approximately 4:30 a.m.
There were no eyewitnesses nor was there any direct evidence linking anyone to the burglary of the truck.
At Sampson Smith's trial, Mitchell Collins testified that at approximately 1:00 a.m. on the morning of the robbery he saw Smith running from an alley and that Smith had a bag "tucked" under his arm. Collins further testified that Myles lived in the neighborhood where he saw Smith. According to Collins, he told Belzoni Police about Smith at 1:30 a.m. (before the robbery was discovered) and he further said that he also told the Belzoni Police at 4:15 a.m., he saw one S.H. Brown and another guy, later identified as Jack Rabbit, coming out of the same alley.
Jacqueline Sanders testified that she and her brother were driving Smith around and Smith told her that he had saved over Sixteen Thousand Dollars ($16,000.00). She claims that the defendant also told her that if she would put her brother out of the car, he would show her the money. She dropped her brother off and then drove to Ladybird Street and put Smith out. Smith met her *38 five (5) minutes later on Church Street and he was carrying a brown bag containing money. According to Jacqueline Sanders, the couple then drove to the Indianola Greyhound Bus station to use the phone. While there Sanders claims to have counted up to $10,000.00 in denominations of one, five, ten and twenty dollar bills.
Sanders admitted that when she found out that her brother was a suspect in the burglary of Myles' truck, she approached Myles and told him that she thought that Smith had burglarized his truck. She told this same story to Officer Lewis of the Belzoni Police Department and agreed to assist in Smith's arrest by getting Smith to ride with her to Jackson. While on this trip to Jackson, Sanders testified that she and Smith stopped at a laundromat and Smith obtained some money from his brothers. Later they were pulled over and Smith was arrested.
Officer Cardell Hughes testified that when he stopped Sanders' vehicle, there was a brown paper bag containing money found in the car. Chief Jones testified that the bag contained $240.00. and that an additional $206.00 was discovered in Smith's billfold. Since Smith lived with his mother, Officer Hughes testified that they secured her permission to search her house, and there found a footlocker which contained $2600.00.
Belzoni Police Chief Jones was allowed to testify over objection that Smith had $240.00 dollars on the floor of the car when he was arrested and $206.00 in his billfold. Chief Jones further testified that the money in the footlocker totaled $2,615.00.
Smith moved for a directed verdict and that motion was overruled.
In his defense Smith produced two alibi witnesses. Henry Lee Waller testified that Smith was shooting dice at Waller's club from 9:00 p.m. until 4:00 a.m. on the night of the robbery. Albert Smith testified that on the night of the robbery, he saw Sampson Smith around 11:30 p.m. at Waller's club and that they shot dice until around 3:30 a.m. and that Smith was the winner that night. Albert testified that he and Sampson Smith went to Red's Cafe and stayed there until around 4:30 a.m. Albert is Sampson's cousin.
The defendant testified in his own defense that his brother gave him $225.00 to buy some marijuana in Jackson. He further stated that the $200.00 found in his wallet were his winnings from shooting dice and that the $2,600.00 found in his footlocker were savings to buy a car. He claimed that the money came from work and his gambling winnings. The defendant denied breaking into Shelly Myles' truck.
The jury found Smith guilty and he was sentenced by the trial court to serve five (5) years in the custody of the Mississippi Department of Correction.

I.

DID THE TRIAL COURT ERR IN FAILING TO GRANT A DIRECTED VERDICT TO THE DEFENDANT OR A PEREMPTORY INSTRUCTION ON THE BASIS OF INSUFFICIENT EVIDENCE?
The effect of this assignment of error is threefold: (1) Smith is arguing that he was entitled to a directed verdict on insufficient evidence; (2) that he was entitled to a peremptory instruction; and (3) that he was entitled to a circumstantial evidence instruction, and that the State had not met the burden of proof for a circumstantial evidence case.
There is no merit to his first two claims but the third claim in this assignment has merit.
The rule of law in considering motions for directed verdict and requests for peremptory instructions in criminal cases is so clear that it need not be repeated and can be found in Banks v. State, 525 So.2d 399 (Miss. 1988) There is no merit to that assignment.
On the assignment of insufficiency of evidence, this Court has held that:
... if there is substantial evidence in the record of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded men in the exercise *39 of impartial judgment might reach different conclusions regarding the guilt of the defendant, we have no authority to disturb the jury's guilty verdict." Fisher v. State, 481 So.2d 203, 214 (Miss. 1985); Burge v. State, 472 So.2d 392 (Miss. 1985); among others.
On the third assignment the defendant maintains the evidence against him came primarily from three sources:
A. The testimony of Mitchell Collins that he saw the defendant running from an alley near the crime scene with a bag tucked underneath his arm.
B. The testimony of Jackie Sanders that Smith told her that he had saved $16,000.00. She also indicated that Smith presented a sum of money in a paper bag and that she counted up to $10,00.00 in the bag.
C. When Smith was arrested he had $446.00 on his person and $2600.00 was discovered later in his footlocker.
We assume the jury evaluated this evidence in reaching its verdict. Wheeler v. State, 536 So.2d 1347 (Miss. 1988).
However, in Fisher v. State, 481 So.2d 203, 214 (Miss. 1985), we held that the State has a stricter burden of proof in circumstantial evidence cases:
Because of the wholly circumstantial nature of the State's evidence ... the state was required to prove each element of the offense beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with Fisher's innocence.
Had some direct evidence been used in convicting this defendant, we could safely hold that this first assignment of error is without merit but the trial record reveals that Smith's conviction was based entirely upon circumstantial evidence and, hence, the stricter burden of proof applied. The trial judge had before him a circumstantial evidence instruction and rejected that instruction altering it to a direct evidence instruction. Therefore, the case was submitted to the jury without the jury being instructed as to the burden of proof in a case of circumstantial evidence. Fisher v. State, supra. at page 214; Flanagin v. State, 473 So.2d 482 (Miss. 1985); Hester v. State, 463 So.2d 1087 (Miss. 1985).
Circumstantial evidence instructions are required when the prosecution is without a confession and without eyewitnesses to the gravamen of the offense charged. Woodward v. State, 533 So.2d 418, 431 (Miss. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989), rehearing denied, ___ U.S. ___, 109 S.Ct. 3179, 104 L.Ed.2d 1041 (1989); Williamson v. State, 512 So.2d 868, 880 (Miss. 1987); Keys v. State, 478 So.2d 266 (Miss. 1985). As this trial record is devoid of either a confession by the defendant or of any eyewitnesses to the commission of the crime, the circumstantial evidence instruction had to be given.
In Peterson v. State, 518 So.2d 632, 637-638 (Miss. 1987), we said:
... If the instructions submitted by counsel are deficient, the trial judge can and should instruct the jury on his own initiative. Ranier v. State, 473 So.2d 172, 174 (Miss. 1985). In U.S. v. Diaz, 585 F.2d 116 (5th Cir.1978) ... No limiting instruction had been requested by defense counsel and the Fifth Circuit held that the failure to grant such an instruction rose to the level of plain or fundamental error.
In the instant case, the trial judge failed to heed the advice of Peterson. The trial judge had before him a circumstantial evidence instruction and in his own hand altered it to turn it into a direct evidence instruction. In doing so he deprived Smith of a substantial right.
For failure to grant a circumstantial evidence instruction, on the facts in this record, the conviction and sentence of the defendant should be reversed and the case remanded to the Circuit Court of Humphreys County for a new trial.

II.

DID THE TRIAL COURT ERR IN ALLOWING CHIEF JONES TO TESTIFY WHEN THE STATE DID NOT IDENTIFY HIM AS A POTENTIAL WITNESS?
This assignment of error is controlled by Rule 4.06(a)(1) of the Uniform *40 Criminal Rules of Circuit Court Practice and the case of Acevedo v. State, 467 So.2d 220 (Miss. 1985).
While the State did violate the rule and Chief Jones should not have been allowed to testify, the error below was harmless. This is true because the testimony of Chief Jones was cumulative to evidence already in the record and the defendant was not unfairly surprised.
This error is not cause for reversal.

III.

DID THE BELZONI POLICE DEPARTMENT HAVE PROBABLE CAUSE TO ARREST THE DEFENDANT AND DID THE TRIAL COURT ERR IN ALLOWING THE MONEY TAKEN FROM HIM AT THE TIME OF HIS ARREST TO BE ADMITTED INTO EVIDENCE?
The third assignment is addressed only because the case must be remanded for a new trial.
In Floyd v. State, 500 So.2d 989, 992 (Miss. 1986), cert. denied, Miss. v. Floyd, 484 U.S. 816, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987), we stated:
Since the arrest was made without the benefit of a warrant ... probable cause must be based on what the officer's knew at the time of Floyd's arrest.
At the time of Smith's arrest in this case, the officers' knew: (1) Shelly Myles' truck had been broken into; (2) Mitchell Collins had said that he had seen Smith in the general vicinity of the burglary at 1:00 a.m.; (3) S.H. Brown and "another guy" had been seen in the same area at 4:15 a.m.; (4) Elijah Smith and S.H. Brown were suspects in the burglary; (5) that Jackie Sanders' brother, Barry Jefferson, was a suspect in the burglary; (6) that Jackie Sanders agreed to assist the police in gathering evidence against Smith; (7) that Jackie Sanders said that Smith had shown her $10,00.00.
The trial record also reveals that Officer Hughes, who stopped the Sanders' vehicle and arrested Smith, testified that although he was aware that an investigation of some sort was underway, he was not informed of what "exactly was going on."
Officer Lewis testified that the investigation had zeroed in on Smith based upon what Jackie Sanders had told them. Smith argues to this Court that at best the officers had a mere suspicion and not probable cause for his arrest and, therefore, the search was illegal. This is a very close question even on the totality of the circumstances rule but as the case must be reversed anyway we decline to reverse on these grounds.

IV.

DID THE TRIAL COURT ERR IN FAILING TO DECLARE A MISTRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT?
This assignment was not objected to at trial and is procedurally barred on this appeal. At retrial, the prosecution should carefully refrain from unnecessarily endangering a potential conviction by loose comment before the jury.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.