DICKINSON, Presiding Justice,
for the Court:
¶ 1. In this lawsuit, Robert Eastman claims Mississippi Valley Silica Company, Inc. (“MVS”) — the company that supplied sand to his employer, Marathon LeTour-neau — failed to warn him of the dangers posed by sandblasting. At trial, MVS requested a sophisticated-userAearned-inter-mediary jury instruction. Although the requested instruction was an incomplete statement of the law, the trial judge refused the instruction for an erroneous reason and failed to instruct the jury properly on the submitted defense. The jury returned a verdict for Eastman, and MVS timely appealed, raising eight issues, including the trial judge’s refusal to grant the sophisticated-user jury instruction. We find this issue dispositive, and we reverse and remand for a new trial.
FACTS
¶ 2. For twenty-eight years, Robert Eastman worked as a sandblaster at Le-Tourneau, a shipbuilder in Vicksburg, Mississippi. LeTourneau supplied silica sand it purchased from MVS to Eastman, who used it daily. Toward the end of his career, Eastman was diagnosed with lung disease and silicosis.
¶ 3. Eastman sued MVS under Mississippi’s products-liability statute,[1] alleging that MVS’ product was defective for failure to contain adequate warnings or instructions.[2] MVS answered, asserting many affirmative defenses, including the provisions of Section 11-1-63 and the sophisticated-user doctrine.
¶ 4. At trial, Dr. Edward Karnes testified that in 1938, and again in 1959, national safety standards were published that required sandblasters to wear air-fed hoods. Dr. Ronald Gots testified that the dangers of sandblasting were known and published in the 1920s and 30s, and that legislation was passed in 1959 — four years before Eastman began sandblasting — that required sandblasters in certain professions to wear air-fed hoods. Dr. Gots concluded that, given the information provided to Le Tourneau, it “had to know” of the dangers posed by sandblasting. Additionally, LeTourneau’s former president *668 testified he had known since 1972 that sandblasting may cause silicosis.
¶ 5. MVS requested a sophisticated-user jury instruction, which the trial judge refused for two reasons. First, he stated the term “sophisticated user” was not defined and would “confuse” the jury. Second, he could recall no direct testimony that Eastman’s employer knew or should have known of the dangers associated with sandblasting.
¶ 6. The jury found MVS sixty percent at fault, and awarded Eastman $3 million in punitive damages; $1.6 million in economic damages; and $3 million in noneco-nomic damages, for a total award of $7.6 million. But because MVS was insolvent, the trial judge reduced the punitive-damages award to zero. Then, after applying Mississippi’s statutory damages cap,[3] he reduced the noneconomic damages to $1 million. After the jury rendered the verdict, but before the trial judge entered final judgment, Eastman died. Later, the trial judge entered a final judgment for Eastman, the deceased.
¶ 7. On appeal, MVS raises the following eight issues: (1) Eastman’s estate was not properly substituted; (2) the trial judge erred by refusing to give MVS’ sophisticated-user jury instruction; (3) the verdict form did not allow the jury to allocate fault under Mississippi Code Section 85-5-7; (4) the fault allocated to MVS was against the overwhelming weight of the evidence; (5) because Eastman had died, damages for future medical costs and future pain and suffering should not have been awarded; (6) the trial judge erred by allocating fault to MVS before applying the damages cap; (7) the issues raised amounted to cumulative error; and (8) a remittitur was proper. MVS also moved to strike the brief Eastman (the deceased) filed in this Court, arguing that, because Eastman’s estate has not been substituted, the party who had filed the brief did not exist.
¶ 8. We find that the circuit judge abused his discretion by denying, rather than reforming, MVS’ proposed “sophisticated-user” instruction. Because we reverse and remand for a new trial, we decline to address the remaining issues.
ANALYSIS
¶ 9. The issue we find dispositive is the trial judge’s failure to instruct the jury on the sophisticated-user defense. Because our standard of review of that issue is critical to our decision, we first turn to our considerable precedent that addresses a trial judge’s ultimate responsibility to instruct the jury properly.
When a party submits an improperly worded jury instruction that raises a central issue in the case, and that is supported by credible evidence, it is the trial judge’s ultimate responsibility to make sure the instruction is reformed properly.
¶ 10. Several of our cases provide familiar principles of law concerning jury instructions. When read together, the instructions must inform the jury sufficiently of the applicable law.[4] A party is entitled to have instructions given that are supported by sufficient, credible evidence[5] *669 and that accurately state the law of the case.[6] Defendants are entitled to instructions presenting their theory of the case, and we have reversed judgments where circuit judges have “eviscerated the defense ... by denying the defendants’ theory instructions ... which compromised the defendants’ right to a fair and impartial trial.[7]
¶ 11. But another principle, ingrained in our law, places upon the trial judge the ultimate duty to instruct the jury properly. Our precedent on the issue was addressed succinctly in Byrd v. McGill, in which the trial judge refused to give a flawed jury instruction on the law of negligence per se.[8] This Court reversed, stating:
The result of the refusal of instruction P-6, coupled with the failure of anyone to substitute a more suitable instruction, was that the jury entered their deliberations unaware that there was such a thing as negligence per se. Much less, did they know that it had any bearing on the case.[9]
¶ 12. In reaching its conclusion, the McGill Court reviewed several prior decisions, including Newell v. State, which stated:
On occasion juries have been left uninstructed due to the oversight, omission or ineptness of attorneys.... Regardless of the reason, the fact remains that juries are at times left groping blindly, though honestly, for the law of the case to aid them in arriving at a verdict.[10]
¶ 13. The Court then turned to Thomas v. State, in which this Court
emphasized that where an instruction relates to a central feature of the case and where there is no other instruction before the court which treats the matter, it is error to refuse an instruction on the grounds that “it has been inartfully drawn.” [11]
¶ 14. Finally, the McGill Court, drawing on the wisdom of Harper v. State, stated “unequivocally” that
where under the evidence a party is entitled to have the jury instructed regarding a particular issue and where the party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new corrected instruction. When the trial judge fails in this duty and where the proffered instruction relates to a central issue in the case which is not covered by any other instruction given to the jury, we will reverse.[12]
¶ 15. The dissent incorrectly concludes that our opinion today “unwisely imposes a duty upon the trial court to *670 reform the jury instruction to make it conform with Mississippi law.” But that duty was imposed long ago by this Court’s majorities in McGill, Newell, Thomas, and Harper and applied as recently in 2001 in McKee v. State[13] — and none of these cases has been overruled, modified, or abrogated. In fairness, the dissent is less about whether we are today imposing a new duty, and more about the dissent’s view that we should overrule McGill, New-ell, Thomas, Harper and their considerable progeny[14] on this issue. We decline to do so.
 ¶ 16. We do agree with the dissent that a trial court may — and, in fact, should — refuse to give jury instructions that incorrectly state the law. But that does not diminish the principle that, where the point of law is a central issue not covered elsewhere in the instructions, the ultimate responsibility to instruct the jury properly falls squarely upon the trial judge, who
has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new corrected instruction.[15]
¶ 17. So, today, we are not imposing a new duty on trial judges, but rather, we are merely following nearly a half-century of precedent that clearly defines the trial judge’s duty. And according to that precedent, where a trial judge fails in that duty, “we will reverse.”[16] Indeed, our own Court of Appeals has recognized and applied the rule we follow today. In Cleveland v. State — joined fully by members of the dissent when they served on that court — the Court of Appeals stated that
the law of this State is quite clear that the trial court may not refuse to instruct the jury on a properly raised defense strictly because the requested instruction is not properly drafted. Rather, it is the duty of the court in that situation to amend the instruction to conform to the applicable law.[17]
¶ 18. As they did in Cleveland, the members of the dissent continue now to recognize the trial judge’s duty to reform inaccurate instructions in criminal cases, but they hold the view that there should be no such duty in civil cases. We cannot agree that a trial judge’s duty to instruct the jury properly may change from case to case, whether civil or criminal.
¶ 19. Our opinion today should not be read as requiring trial judges to rummage through the law books to discover what jury instructions might apply to the case. In Conner v. State, even though “[t]he defense tendered no instruction defining *671 simple murder,”[18] it argued on appeal that the trial court
was duty-bound not only to revise technically flawed instructions but also to advise defense counsel that a definitional instruction would also have to be submitted and then provide an opportunity to prepare such an instruction.[19]
¶ 20. Rejecting the argument, this Court stated that “[t]he case law does not impose upon a trial court a duty to instruct the jury sua sponte; nor is a court required to suggest instructions in addition to those which the parties tender.”[20] Our opinion today is not in conflict with Conner.
¶ 21. The rule is as simple as it is appropriate: When a party submits a jury instruction on an important issue not covered in the other instructions, it is the trial court’s ultimate duty to instruct the jury properly. Having again set forth the rule and the law applicable to the trial judge’s duty with respect to jury instructions, we now turn to the case before us.
MVS properly raised the sophisticated-user defense, but it submitted an inaccurate instruction that should have been reformed by the trial judge.
¶ 22. Mississippi recognizes both a statutory and the common-law “sophisticated-user” defense. We will address both.

“Sophisticated-user doctrine” at common law

¶ 23. First, it is worth noting that courts and litigants often use the terms “learned intermediary” and “sophisticated user” interchangeably. According to one commentator:
The sophisticated user defense relieves a seller of liability for failing to warn a subsequent user of dangers or defects of which the user is already aware. The defense is applied in two situations: (1) where the injured ultimate user is aware of the hazards presented by the product; (2) where an intermediate purchaser is knowledgeable, but the injured end user is ignorant.[21]
¶24. Although the latter situation is properly labeled the “learned-intermediary” defense, the context and facts of a particular case will dictate which label is appropriate, regardless of the label actually used. The commentator goes on to explain why the defense can relieve a manufacturer of liability:
The common law sophisticated user defense developed in the context of industrial users and employer-employee relationships .... The relationship between employer and employee probably provided the basis for the defense. As a general rule, an employer has a duty to maintain a safe workplace for its employees, including maintenance of safe equipment and warning of any dangers present in the workplace.[22]
¶ 25. While the common-law defense is uniformly recognized, states have not always agreed on the correct application.[23] *672 This Court addressed the common-law defense in Swan v. I.P., Inc.,[24] in which a manufacturer supplied polyurethane foam to a contractor, who applied it to the roof of a school. A teacher sued the manufacturer and others, alleging the foam’s fumes injured her. The trial court granted summary judgment to the manufacturer
based on the “learned intermediary” defense to products liability actions which provides that a manufacturer’s duty to warn may be discharged by providing information to a third person upon whom it can reasonably rely to communicate the information to the ultimate users of the product or those who will be exposed to its hazardous effects.[25]
¶ 26. This Court stated that the “learned-intermediary defense does not relieve the manufacturer of its duty to warn ... unless the manufacturer’s reliance on the intermediary is reasonable.” And because material issues of fact existed as to that question, this Court reversed.[26]
¶27. We now turn to MVS’ proposed instruction, which stated:
If the purchaser of silica [LeTourneau] knew or should have known the dangers that may be associated with silica, then the purchaser is a sophisticated user, and a supplier [MVS] has no duty to warn of those dangers.
¶ 28. We find no merit in the trial judge’s stated reason for refusing the instruction. Indeed, the instruction, itself, defined a sophisticated user (in the context of this case) as one who “knew or should have known the dangers that may be associated with silica.” But even if the trial judge had been correct, that is, had the term not been defined, then the trial judge would have been in error for failing to define it for the jury.
¶ 29. We do find that the instruction was improperly worded, not for the reason stated by the trial judge, but because it failed to include the common-law, reasonable-reliance requirement announced in Swan. And because the trial judge refused the instruction, rather than reforming it as required by Newell, Thomas, Harper, and McGill, we must reverse and remand for a new trial.

“Sophisticated user” under Mississippi statute

¶ 30. A few months after this Court handed down Swan, the Mississippi Legislature passed what has come to be known as Mississippi’s products-liability statute.[27] While statutes often supersede the common law, the products-liability statute does not. It specifically provides: “Nothing in this section shall be construed to eliminate any common law defense to an action for damages caused by a product.”[28]
¶ 31. One subsection of the products-liability statute codifies the sophisticated-user doctrine by stating in relevant part:
*673 In any action alleging that a product is defective pursuant to paragraph (a)(i)2 of this section [failure to contain adequate warnings or instructions], the manufacturer or seller shall not be liable if the danger posed by the product is known ... to the user ... of the product. ...[29]
¶ 32. Unlike its common-law companion, the statutory defense includes no requirement of reasonable reliance. Instead, all that is required under the statute to shield a seller from liability is that the “user or consumer” knew of the dangers posed by the product. Both parties and the trial court took the position that Le-Tourneau was the user. In arguing against MVS’ proffered sophisticated-user instruction, Eastman’s counsel stated
that a sophisticated user is a legal term as defined under the learned intermediary doctrine, and there has been, as the court said, no testimony with respect to the learned intermediary doctrine and what Mississippi Valley may have done to apprise LeTourneau of the known hazards.
¶33. The trial judge rejected the instruction, in part, because he could not recall direct testimony that LeTourneau knew of the dangers of silica.
¶ 34. Section 11-1-63 does not define “user,” and this Court has never addressed the issue. One reasonably could say that LeTourneau was the “user” because it used sand in its business. If so, MVS’ proffered instruction was a correct statement of the law[30] and should have been given.
¶ 35. But one also reasonably could say that, because Eastman used the sand to do the sandblasting, he was the user. If so, the instruction was flawed and should have been reformed by the trial judge by striking the word “purchaser” and substituting the word “user.” And to the extent the trial judge felt the term “sophisticated user” would confuse the jury, his remedy — rather than refusing the instruction— was to provide the jury with a definition sufficient in his judgment to remove the confusion; but he failed to do that here.
¶ 36. Because we must reverse under the common-law application of the defense; and because neither of the parties briefed or addressed the meaning of “user” as it is used in the statute, we decline to address it here.
CONCLUSION
¶ 37. MVS submitted a flawed jury instruction on the sophisticated-user defense, as recognized by Mississippi common law. The trial judge committed reversible error by refusing, rather than reforming, the jury instruction. We therefore reverse the judgment of the circuit court and remand the case for a new trial consistent with this opinion.
¶ 38. REVERSED AND REMANDED.
CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. WALLER, C.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, J. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.

. Miss.Code Ann. § 11-1-63 (Rev.2002).

. Miss.Code Ann. § 11 — 1—63 (a)(i)2 (Rev. 2002).

. Miss.Code Ann. § 11-1-60(2) (Supp.2011).

. Barrett v. Parker, 757 So.2d 182, 187 (Miss.2000) (quoting Starcher v. Byrne, 687 So.2d 737, 742 (Miss.1997)).

. Adkins v. Sanders, 871 So.2d 732 (Miss.2004); Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373 (Miss.2004) (a trial judge may refuse an instruction if it lacks a proper foundation in evidence); Reese v. Summers, 792 So.2d 992 (Miss.2001) (both parties have the right to embody their theories of the case in the jury instructions provided there is testimony to support it).

. Richardson v. Norfolk Southern Ry. Co., 923 So.2d 1002, 1010 (Miss.2006).

. Blake v. Clein, 903 So.2d 710, 719-20 (Miss.2005).

. Byrd v. McGill, 478 So.2d 302, 303 (Miss.1985).

. Id. at 305.

. Newell v. State, 308 So.2d 71, 74 (Miss.1975).

. McGill, 478 So.2d at 305 (quoting Thomas v. State, 278 So.2d 469, 472 (Miss.1973)); See also Lee v. State, 469 So.2d 1225 (Miss.1985); Rainer v. State, 473 So.2d 172 (Miss.1985); Mease v. State, 539 So.2d 1324, 1335 (Miss.1989).

. McGill, 478 So.2d at 305 (Miss.1985) (citing Harper v. State, 478 So.2d 1017, 1018 (Miss.1985)).

. McKee v. State, 791 So.2d 804, 809 (Miss.2001) (quoting Harper, 478 So.2d at 1018).

. Wilson v. State, 639 So.2d 1326, 1330 (Miss.1994); Simpson v. State, 553 So.2d 37, 39 (Miss.1989); Mease v. State, 539 So.2d 1324, 1335 (Miss.1989) (noting the rule applies in civil cases as well); Peterson v. State, 518 So.2d 632, 637-38 (Miss.1987); Clark v. Whiten, 508 So.2d 1105, 1109 n. 2 (Miss.1987); Guilbeau v. State, 502 So.2d 639, 642 (Miss.1987); Harper v. State, 478 So.2d at 1018; Lee v. State, 469 So.2d 1225, 1232 (Miss.1985); McGill, 478 So.2d at 305; Rainer v. State, 473 So.2d at 174; Newell, 308 So.2d at 74-5; Thomas v. State, 278 So.2d at 472-73.

. McGill, 478 So.2d at 305 (citing Harper, 478 So.2d at 1018).

. McGill, 478 So.2d at 305 (citing Harper, 478 So.2d at 1018).

. Cleveland v. State, 801 So.2d 812, 815 (Miss.Ct.App.2001).

. Conner v. State, 632 So.2d 1239, 1254 (Miss.1993).

. Id.

. Id.

. Kenneth M. Willner, Failures to Warn and the Sophisticated User Defense, 74 Va. L.Rev. 579, 587 (April 1988).

. Id. at 592-93.

.Compare Goodbar v. Whitehead Bros., 591 F.Supp. 552 (D.C.Va.1984) (Under Virginia law, "if the danger related to the particular product is clearly known to the purchaser/employer, then there will be no obligation to warn placed upon the supplier.”), with Hoffman v. Houghton Chem. Corp., 434 Mass. 624, 630, 751 N.E.2d 848 (Mass.2001) (Under Massachusetts law, "the sophisticated user defense protects a supplier from liability for failure to warn when the end user knows or *672 reasonably should know of a product's dangers.”), and Gray v. Badger Mining Corp., 676 N.W.2d 268, 277-78 (Minn.2004) (noting that the defense applies when either situation is met: "(1) the end user’s employer already has a full range of knowledge of the dangers, equal to that of the supplier; or (2) the supplier makes the employer knowledgeable by providing adequate warnings and safety instructions to the employer.”).

.Swan v. I.P., Inc., 613 So.2d 846 (Miss.1993).

. Id. at 851 (citing Adams v. Union Carbide Corp., 737 F.2d 1453, 1456 (6th Cir.1984)); Note, Failures to Warn and the Sophisticated User Defense, 74 Va. L.Rev. 579 (1988).

. Swan, 613 So.2d at 856.

. Miss.Code Ann. § 11-1-63 (Rev.2002).

. Miss.Code Ann. § 1 l-l-63(h).

. Miss.Code Ann. § 11 — 1—63(e) (emphasis added).

. Miss.Code Ann. § 11 — 1—63(e) (Rev.2002).