# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-01689-SCT

*ORLANDO NEWELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2018 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| TRIAL COURT ATTORNEYS: | JOEL SMITH |
| | MARY ELIZABETH McFADYEN |
| | IAN LAWRENCE BAKER |
| | CHRISTOPHER ALAN GREEN |
| | GLENN F. RISHEL, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/19/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Orlando Newell shot and killed Michael Woods.  At trial, he argued self-defense, and

the jury convicted him of murder.  The trial court gave a pre-arming jury instruction, which

precluded Newell's self-defense theory.  Because this instruction was not supported by the

evidence and improperly impaired Newell's self-defense claim, the trial court's grant of the pre-arming instruction was error; this Court consequently reverses Newell's conviction and remand the case for a new trial.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On September 24, 2016, Orlando Newell shot and killed Michael Woods. The primary issue of contention at trial was whether Newell shot Woods in self defense.

¶3.     On December 4, 2017, Newell was indicted for murder, felony possession of a stolen firearm, and felon in possession of a firearm. The indictment was amended on May 10, 2018, to charge Newell as a habitual offender. Newell pled guilty to the felon in possession charge, and trial solely on the murder charge began on May 15, 2017. That trial ended in a hung jury and consequent mistrial. Newell's second trial occurred in November 2017.

¶4.     On the evening of September 23, 2016, Newell attended a birthday party for his cousin James Newell held at another cousin's apartment. At the time, Newell was living with his sister Sharon Newell in her apartment. Sharon got off work at 2:00 a.m. on September 24, 2016, had her cousin Latonya pick her up, and the two of them went to James's party. Sharon only stayed at the party for approximately fifteen to twenty minutes, because she had to work the next morning. Newell, Sharon, Latonya, and Latonya's boyfriend, "Steez," left in Newell's car with Steez driving to take Sharon home. Sharon and Newell began arguing and Newell asked Steez to pull the car over. Newell got Sharon out of the car and began to hit her with his belt. Sharon got in Newell's car and drove home, leaving Newell, Latonya, and Steez on the side of the road. When Sharon returned to her apartment, she removed

2

Newell's key to her apartment from his keychain and began throwing his personal belongings off her balcony into the parking lot below. When she threw his set of weights off the balcony, the weights landed on the windshield of Newell's car and shattered the windshield.

¶5. Newell arrived at the apartment complex and, with Newell in the parking lot and Sharon on the balcony above, they began arguing. Sharon testified that Newell began throwing cologne bottles at her. She then went into her kitchen, retrieved several kitchen knives, and threw four or five of them at Newell. Sharon alleged that Newell then told her multiple times that he was going to kill her. Newell eventually gathered his belongings, placed them in his car, and left in his car.

¶6. In the meantime, Sharon, upset, called several people, including Michael Woods, who, according to Sharon, was her friend, ex-boyfriend, and boyfriend. A little after 3:00 a.m., Woods arrived at Sharon's apartment and asked Sharon and her children to spend the night with him. Sharon declined, as she had to work the next morning. Close to 6:00 a.m., Woods called and texted Sharon several times and returned to her apartment. Sharon testified that at around 6:15 a.m., she let Woods into her apartment and Woods walked in to check on her and the kids. He walked to the bedroom, saw the children asleep, and left.[1]

¶7. During this 3:00 a.m. to 6:00 a.m. time frame, Newell drove his car to Latonya's house. Because the windshield was shattered, he had to drive with his head outside the driver's side window. He left his clothes at Latonya's house, and stated that he needed to

---

[1]Newell attempted to introduce text messages between Sharon and Woods that indicated that they had been fighting about Sharon's new boyfriend that evening, and that Woods believed the boyfriend to be at Sharon's apartment during this 6:15 a.m. visit. The court excluded these text messages from evidence.

park his car somewhere because he couldn't see out of it to drive it safely. He then parked his car at another relative's house. Newell retrieved his gun from the console of the car and got in Latonya's car with Steez. Newell testified that he removed his gun from his car and placed it on his person because he did not want to leave it at a relative's house. At that point, Newell returned to the birthday party. James saw Newell at his birthday party with a gun in his waist around 3:50 a.m. James testified that Newell stated that he was going to "get" Sharon and that James called Sharon to inform her of this. Newell then went to Latonya's house and looked through his possessions. He testified that he had money missing that he had hidden in a sock in a closet at Sharon's apartment.

¶8.     A little after 6:00 a.m., Steez drove Newell back to Sharon's apartment. Newell testified that he wanted to retrieve his money. When they arrived, Newell saw Woods walking down the stairs. Newell got out of the car, and he testified that he was going to ask Woods to retrieve his money for him. He saw Woods by the hood of the car picking up something off the ground. Newell was standing next to the back of a pickup truck parked next to the car. Newell testified that he asked Woods to retrieve the money for him and that Woods responded angrily. Newell saw a knife in Woods's hand, and Woods began advancing towards Newell angrily. Newell testified that he pulled the gun out of his pocket and Woods began speeding up. Newell was scared. Newell then shot several times in quick succession.

¶9.     Sharon testified that she heard gunshots, ran to her kitchen window, and saw Newell standing between a car and a truck, aiming with his arm pointed down. She did not see a

4

gun. She testified that she then opened the door, ran to the balcony, heard Woods, and ran down to him. She then ran back upstairs to get her phone, called 911, and ran back down to be with Woods while they awaited help.

¶10. When the police arrived, they did not observe a knife near Woods's body. Four knives were recovered from the scene. The closest knife to Woods was located in the pickup truck bed, approximately ten feet away from Woods. The knife had dew on top of it and no dew underneath it. A cell phone and keys were located near Woods. Two projectiles were recovered from the scene, one projectile was recovered at the hospital between Woods's shirt and body, and two projectiles were recovered from inside Woods's body. Five shell casings were recovered from the scene. For the three shell casings located by Investigator Garner, a length of approximately twenty-five feet existed between the casing closest to Woods to the casing farthest away from Woods. Officer Wallace testified that the same distance with regard to all five shell casings located was approximately thirty to thirty-five feet. Woods's autopsy indicated that he received five bullet wounds. Two of those bullet wounds entered Woods's back, one entered the lateral side of his right hip, one entered the lateral side of his left chest, and one entered the right side of his chest. Four of the bullets moved from the back to front direction in his body. A gun was located in the trash can in a different apartment complex, and Newell was arrested at that same complex. His DNA was on the gun, and the gun matched several of the projectiles found on the scene.

¶11. At the scene of the crime, Sharon attempted to remove a set of keys from the perimeter established by the police. Investigator Garner saw her and demanded she return

the keys to their location in the crime scene.

¶12.    The jury was given instructions on murder, manslaughter, self-defense, stand your ground, and it was also given a pre-arming instruction.  Newell's counsel refused to agree to the pre-arming instruction, but did not state a legal issue with its use.  The jury found Newell guilty of murder.  Newell appeals the trial court's grant of the pre-arming instruction.

## ANALYSIS

### 1.    Standard of Review

¶13.    Jury instructions are reviewed for abuse of discretion.  ***Boston v. State***, 234 So. 3d 1231, 1233 (Miss. 2017).  They must fairly announce the law of the case and not create an injustice to the defendant. ***Id.***  The defendant has a right to have the jury instructed as to his theories of defense that are supported by the evidence, no matter how meager or unlikely. ***Id.***  Refusing to allow the defendant to present his theories of defense compromises the right to a fair and impartial trial.  ***Miss. Valley Silica Co., Inc. v. Eastman***, 92 So. 3d 666, 669 (Miss. 2012).  "[T]he ultimate responsibility to instruct the jury properly falls squarely upon the trial judge[.]" ***Id.*** at 670.

### 2.    Pre-arming Instruction

¶14.    The trial court gave the State's pre-arming instruction, which stated "The Court instructs the Jury if a person provokes a difficulty, arming himself in advance, and intending, if necessary, to use his weapon and overcome his adversary, he becomes the aggressor, and deprives himself of the right of self-defense."  While Newell's appeal was pending, this

6

Court abolished pre-arming instructions, which had previously been heavily disfavored in Mississippi. *Taylor v. State*, 287 So. 3d 202 (Miss. 2020). In doing so, we found pre-arming instructions to be "long-condemned, heavily criticized, disfavored, and exceedingly unwise." *Id.* at 209. The Court recognized that "[i]f a defendant's self-defense claim has an evidentiary basis but is indeed laughable, Mississippi's able prosecutors are no doubt skilled enough to point this out to juries. In fact, they do so quite often." *Id.* at 208. The Court discussed how problematic the estoppel of a self-defense theory is, and that defendants have the right to assert such a theory when an evidentiary basis for it exists. *Id.* It also discussed the rights in this State of concealed carry, the right to defend oneself, and the problematic effect pre-arming instructions have on those rights. *Id.* We ultimately found that "[t]he bottom line is that one should not necessarily risk estoppel or forfeiture of his privilege of self-defense because he has previously armed himself in anticipation of an attack or a perceived dangerous situation." *Id.* at 209. Accordingly, we reverse Newell's conviction and remand this case for a new trial in which a pre-arming instruction will not be available.[2]

¶15. Additionally, the pre-arming instruction given in Newell's case would be error even under the previous caselaw as it stood prior to the abolishment of pre-arming instructions. Even prior to their abolishment, pre-arming instructions were heavily disfavored in Mississippi. This Court has repeatedly cautioned the State that it requests such an instruction

---

[2]The State claims that Newell waived this argument for the lack of a specific objection at trial and the failure to raise the issue in his motion for judgment notwithstanding the verdict. However, Newell's counsel did voice his objection to the instruction. And this Court has noted that the trial judge has "the ultimate duty to instruct the jury properly." *Eastman*, 92 So. 3d at 669. Further, even if this Court analyzed this issue under a plain error standard, the pre-arming instruction would be error.

at its own peril. *Taylor*, 287 So. 3d 202; *Boston*, 234 So. 3d at 1234; *Johnson v. State*, 908 So. 2d 758, 763 (Miss. 2005); *Keys v. State*, 635 So. 2d 845, 849 (Miss. 1994) (listing numerous cases in which this Court "denounced" this type of instruction). Every defendant has a right to present his theory of the case, and an instruction that cuts off a self-defense claim and prohibits the defendant from asserting his theory of the case is highly problematic. *Boston*, 234 So. 3d at 1234. "Even if the great weight of the evidence against [the defendant] supports a contrary view, [the defendant] is still entitled to present his defense to the jury unimpaired by instructions similar to [the pre-arming instruction] which preclude his right to self-defense." *Keys*, 635 So. 2d at 849; *Dew v. State*, 748 So. 2d 751, 754 (Miss. 1999); *Boston*, 234 So. 3d at 1234. This Court has held that pre-arming instructions are only appropriate in "exceedingly rare circumstances" and noted that they have only been affirmed in three cases. *Boston*, 234 So. 3d at 1235. "In each case, the record was uncontradicted that the defendants armed themselves with the intent to initiate a confrontation." *Id.* In two of those cases, the defendant, while not in physical danger from the victim, armed himself and went to the victim's house. *Hart v. State*, 637 So. 2d 1329 (Miss. 1994), *abrogated by Taylor v. State*, 287 So. 3d 202 (Miss. 2020); *Hall v. State*, 420 So. 2d 1381 (Miss. 1982), *abrogated by Taylor v. State*, 287 So. 3d 202 (Miss. 2020). In the third case, the defendant, knowing the victim to be present at a trailer, armed himself, went inside the trailer, and challenged the victim. *Reid v. State*, 301 So. 2d 561 (Miss. 1974), *abrogated by Taylor v. State*, 287 So. 3d 202 (Miss. 2020).

¶16. It is undisputed that Newell armed himself several hours before the encounter between

8

him and Woods. And it is undisputed that this was a chance encounter; Newell had no knowledge of Woods being present at Sharon's apartment. The record is in conflict regarding who initiated the fight. In **Boston**, the confrontation was likewise by chance, and "[n]o evidence exists that Boston placed the knife in his pocket with the intent to provoke an altercation with Dean," and thus this Court found reversible error in the grant of the pre-arming instruction. **Boston**, 234 So. 3d at 1235. Similarly, no evidence exists that Newell armed himself with the gun with the intent to provoke an altercation with Woods, especially given that it is undisputed that Newell had no knowledge of Woods being present at Sharon's apartment. The grant of the pre-arming instruction in this case was error, as the instruction was not supported by the evidence, and it improperly precluded Newell's self-defense claim.[3]

## CONCLUSION

¶17. Because this Court has abolished pre-arming instructions, and because, in the alternative, the pre-arming instruction given in this case was in error and impaired Newell's right to bring his theory of the case to the jury, this Court reverses Newell's conviction and remands the case to the trial court for a new trial.

¶18. **REVERSED AND REMANDED.**

　　**KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND**

---

[3]Even under a plain error standard, the trial court clearly deviated from the legal rule regarding pre-arming instructions, and the error resulted in a manifest miscarriage of justice. In homicide cases, the defendant has a right to have the jury instructed on his theory of the case, "[e]ven though based on meager evidence and highly unlikely[.]" **Hester v. State**, 602 So. 2d 869, 872 (Miss. 1992). Precluding such a right is reversible error. **Id.** Newell's first trial, that also included the pre-arming instruction, resulted in a hung jury. Without this improper instruction, the jury would be able to fully consider his self-defense claim, and determine what credit to give Newell's testimony regarding his self-defense claim.

**ISHEE, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶19.    The evidence presented at trial supports a pre-arming instruction. For the reasons outlined in my dissent in *Taylor v. State*, 287 So. 3d 202 (Miss. 2020) (Randolph, C.J., dissenting), I reject my colleagues' abandonment of our longstanding precedent that pre-arming instructions are appropriate when supported by the facts.

**GRIFFIS, J., JOINS THIS OPINION.**